JOHN J. HADDON v. WILLIAM HEMINGWAY AND EDWIN S. HARGER.

*Trust for the benefit of an heir—Bill to quiet title.*

The probate court may be required to make partition of lands devised by a will dividing the real estate among the heirs; but the partition does not change the nature of the title to each share.

Executors have authority under an active trust imposed on them by a will, to sell the share of land falling to an heir, control and invest the proceeds, and use them for the support of the heir.

One who has bought land from an executor empowered by the will to sell it for the heir's benefit, can maintain a bill to quiet his title as against one who has purchased the same land at a sale on execution running against the heir; and the sheriff is a necessary defendant, in order to prevent the execution of his deed.

Appeal from Oakland. Submitted October 25 and 29. Decided October 31.

BILL TO QUIET TITLE. Defendants appeal.

*Wm. Newton* and *A. C. Baldwin* for complainant, cited as to the executor's title to an estate in trust, *Brewster v. Striker*, 2 Comst., 19; *Smyth v. Anderson*, 5 Cent. L. J., 453.

*William Hemingway* for defendants, argued that the estate involved was a present legal estate in the heir, and subject to levy and execution, and cited *Mandlebaum v. McDonell*, 29 Mich., 78; and *Re Stringer's Estate*, 4 L. & Eq. Rep., 637.

CAMPBELL, C. J. Hemingway as purchaser and Harger as sheriff, under an execution sale, upon a decree of alimony against Thaddeus W. Axford, of certain lands claimed to belong to the execution debtor under his father's will, were made defendants in a bill to restrain the completion of the sale as against the rights of Haddon who filed the bill as owner in possession to quiet his title against this claim.

Some questions were made concerning the validity of the execution proceedings aside from the title to the land, but inasmuch as complainant must make out his own title, and if made out must prevail in any event, we need not consider these questions.

The will of William M. Axford, which has given rise to this controversy, after some special bequests and devises to various children, contains the following residuary disposition:

"It is my last will, and I hereby direct that all the remainder of my real estate be equally divided among my children who may be living at my decease, and the heirs of any who may have deceased. And I further direct that the share belonging to my son Thadeus W. Axford, whether it remains in lands or is sold and converted into money, shall remain in the hands of my executors, to be controlled and managed by them, and

the avails applied for the benefit of the said Thadeus Axford, so far as he may need the same for his support, and upon the decease of the said Thadeus W. Axford the said share is to go to his issue, if he have any, and if not, to his brothers and sisters and their legal representatives. And I hereby authorize my executors, if it seems best to them and most for the benefit of my heirs, to sell at public auction or private sale, and convey the whole or any part of the real estate aforesaid and divide the avails among my children or their legal representatives, retaining the share of Thadeus W. Axford in their own hands, and applying the interest for his benefit, as above directed. If my said executors shall sell the share of any real estate belonging to my said son Thadeus W. Axford, I hereby authorize them to invest the whole or any part of the avails in other real estate, as to them shall seem most beneficial to him, taking the deed or deeds therefor in their own names as trustees for him. And I further direct my executors to retain a reasonable amount of my son Thadeus W. Axford's share from time to time as compensation for their services in managing and controlling his share."

Partition was had in the probate court, and the commissioners allotted to Thadeus W. Axford the lands in controversy. The executors subsequently sold them to complainant for $5000.

Defendants insist the estate belonged to Thadeus in fee simple. Complainant claims the executors held the property under an active trust and had authority to dispose of it.

There can be no doubt of the meaning of this will, and the only question is whether the executors under our statute of Uses and Trusts could do as they did. So far as the partition is concerned, the court of probate had authority to divide the lands, and the rest of the heirs could have compelled it. The form of setting apart this share cannot change the title which would have existed in the undivided interest. The several estate is the same as the estate before held in common.

Under this will the intention is plain that Thadeus should not control or manage any of the property set apart for his benefit, and that he should receive from it no more than was needed for his support.

It is also expressed that the executors are to have the entire management and control of this property, with authority to determine whether the land should be kept or sold, and with power to use the proceeds either in money investments or in purchasing other lands, which, if purchased, were to be conveyed to them as trustees. The property was to be managed and controlled by them and the avails applied by them to his support as far as needed.

This imposed upon them the active duties of management and control of the fund in whatever shape they chose to put it, the investment or other use of it, and the collection of the avails, as well as the discretion of applying these for his support. Nothing can be more clear than the purpose of creating an active and not a passive trust, in which the trustees were to do everything and the beneficiary was absolutely excluded from doing anything.

Our statute of Uses and Trusts expressly authorizes trusts to be created, among other things: "*Second,* to sell, mortgage, or lease lands, for the benefit of legatees, or for the purpose of satisfying any charge thereon; *Third,* to receive the rents and profits of lands, and apply them to the use of any person, during the life of such person, or for any shorter term, subject to the rules prescribed in the last preceding chapter."

There is nothing in that chapter bearing on the questions involved in this record.

The trusts in the will are in precise accordance with these permitted trusts in lands, and being in all respects within the statutory language, they need no resort to construction to maintain them.

If valid, as we think they are, the sale to complainant was in accordance with them.

The defendant Hemingway was, in the language of the act for quieting titles to land, "setting up a claim thereto in opposition to the title claimed by the complainant." Comp. L., § 5072. And as Thadeus was an

heir-at-law whose share in the inheritance had apparently been partitioned to him, so that to those without knowledge of the will he would appear to be its owner, the execution sale, valid or invalid, would have been a cloud on the title had there been no statute enlarging the remedy against claimants out of possession. The other defendant was a necessary party to prevent the execution of the deed on the sheriff's sale.

The decree quieting the title must be affirmed with costs.

The other Justices concurred.