## TRAVER and others *v.* BAKER.

*(Circuit Court, D. Oregon.* February 16, 1883.)

1. PARTITION OF LANDS.

A partition of a tract of land, by a judicial decree, between part owners of the whole tract, does not change the character or origin of the title of any of the parties, but the portion which each takes in severalty under the decree is, in contemplation of law, the very portion which belonged to him as tenant in common, and he holds it thereafter under the same title and subject to the same obligations, covenants, and contracts as before.

2. QUITCLAIM DEED—COVENANT THEREIN.

A quitclaim deed to a "piece or parcel of land," describing it, only operates as a conveyance to pass the grantor's present interest therein; but if such deed also contain a covenant warranting the "possession" of said land against any claim "by" or "through" the grantor, it will estop him and his heirs and subsequent grantees from maintaining any suit to effect such possession.

3. UNRECORDED DEED—WHEN VOID.

A conveyance made in 1861, and not recorded within 30 days from its execution, is void as against a subsequent conveyance, first recorded, to a purchaser in good faith and for a valuable consideration.

Suit for Partition.

*George H. Williams* and *George H. Durham*, for plaintiffs.

*Benton Killin*, for defendant.

DEADY, J. This suit is brought by the plaintiffs, George W. and Emma S. Traver, citizens of the state of California, and George A. and Ida M. Graham, citizens of the state of Ohio, for the partition of lots 1 and 2 of block 256, of the city of Portland. The suit was commenced on October 16, 1879, and the case heard on the amended bill, answer thereto, and replication, together with the exhibits and testimony. The principal questions in the case are questions of law, and the facts material to their determination are substantially admitted. On February 22, 1861, Daniel H. Lownsdale executed a deed to John R. Wilkinson for the three-fourths of block 256 of the city of Portland, the same being lots 1, 2, 3, 4, 5, and 6 of said block, describing the premises therein by metes and bounds coincident with the bordering lines of the adjacent streets, and the east and south lines of the north-west corner of the block, consisting of lots 7 and 8, then, as appears from the deed, in the possession of "Mrs. Adaline Wilkinson," which deed was acknowledged and filed for record on March 11, 1861. The operative words of this deed are contained in this clause: "The party of the first part, in and for the consideration of $600 to him in hand paid by the party of the second part, has bargained and sold, and by these presents does bargain, sell, release, convey, and quitclaim, unto the party of the second part all that piece or parcel of land situate within the corporate limits of the city of Portland," and described as above. After the *habendum*, "to the use and benefit of the party of the second part, his heirs and assigns, forever," the deed proceeds:

"The party of the first part covenants to and with the party of the second part that he will warrant and defend the party of the second part in the possession of the same, against all claims against the same, either through or by the party of the first part; and that said land is parcel of the claim of land awarded to the party of the first part, and as affirmed to him by the secretary

of the interior of the United States on the thirteenth of July, 1860, and ordered patent to issue to the party of the first part; and that if patent issue to the party of the first part, this shall be his deed to the party of the second part, in general warranty."

It is admitted that the defendant has succeeded, by a regular chain of conveyances, to the rights and interest of Wilkinson, under this deed, to lots 1 and 2 of block 256.

Prior to and at the passage of the donation act, on September 27, 1850, (9 St. 497,) the grantor in this deed was a married man, and an occupant of a portion of the public domain, under the laws of the provisional government of Oregon, regulating the possession thereof, including block 256, and thereafter became a settler thereon under section 4 thereof, and having complied with the requirements of the act and made proof thereof to the satisfaction of the surveyor general of Oregon, as provided in section 7 of the same, on October 17, 1860, he received a patent certificate for the donation, in and by which the east half thereof was set apart to himself, and the west half, including said block 256, to his wife, Nancy, who had died on April 15, 1854, leaving her husband and four children surviving her, who thereupon, under said section 4, took said west half of the donation in equal parts, as the donees of the United States.

On January 17, 1860, Lownsdale purchased the interest of Isabella E. Gillihan, a daughter of Nancy by a former husband, in the donation, and on February 14th of the same year conveyed an undivided two-fifths of said interest to Hannah M. Smith, but the deed to her was not recorded until February 12, 1862.

On May 4, 1862, Lownsdale died, leaving four children, and the plaintiffs Emma S. Traver and Ida M. Graham, the children of a deceased daughter; and on June 6, 1865, a patent to the donation was issued by the United States to the heirs of said Lownsdale and Nancy, dividing the same between them as provided in the certificate.

On April 28, 1864, William T. Gillihan, a son of Nancy by a former husband, brought a suit in the state circuit court for partition of the west half of the donation, in which the other children of Nancy and the heirs of Lownsdale, together with many other persons claiming divers blocks and lots therein as the vendees of Lownsdale, including Jacob Gozette, under whom the defendant claims, were made defendants, and on May 22 and August 12, 1865, said court determined that Lownsdale, as the survivor of Nancy and the grantee of Isabella E., was the owner in his life-time of an undivided two-fifths of the west half of the donation, and that said William T. Gil-

lihan and Millard O. and Ruth A. Lownsdale, her children by said Daniel H., were then each the owner of an undivided one-fifth of said half; and set apart and allotted to said three children, in severalty, certain portions thereof, and the remainder to the heirs, vendees, or claimants under Lownsdale according to their respective interests, without determining what they were; and because said partition was unequal, it was further provided that the children of Nancy should be paid the sum of $39,156.02, to be apportioned among the several parcels of land set apart to the heirs, vendees, or claimants aforesaid, and to be a lien thereon, of which sum $475.37 was assessed upon lots 1, 2, and 3 of said block 256, and thereafter duly paid by said Jacob Gozette.

On February 23, 1869, James P. O., a son of Lownsdale by a former wife, purchased from Hannah M. Smith the interest formerly conveyed to her by Lownsdale, and afterwards and before the commencement of this suit said James P. O. and all the heirs of Lownsdale, except the plaintiffs Emma S. and Ida M., conveyed their interests in the premises to the plaintiff George W. Traver.

The defendant claims that the covenant in the deed of Lownsdale to Wilkinson is a warranty of "all that piece or parcel of land" described in the deed, in effect, as three-fourths of block 256, against all persons claiming the same "through or by" the former, and therefore the plaintiffs, who claim through him as his heirs, are estopped to claim any interest in the premises, the same as Lownsdale would be if living.

The plaintiffs deny that the covenant in the deed relates to or affects any interest in the premises except what Lownsdale then had —the one-fifth he took as the survivor of his wife, Nancy, and the three-fifths of the fifth he purchased of Isabella E. and did not convey to Smith; and further, that the legal operation of the partition was to effect an exchange of distinct parcels of land between the heirs of Lownsdale and the children of Nancy, and that the former thereby took three-fifths of block 256, as purchased from said children, and not by descent from Lownsdale, and therefore they are not bound by his covenant or contract in relation thereto, and also that they have since become the owners by purchase from Smith of the two twenty-fifths sold to her by Lownsdale prior to his conveyance and covenant to Wilkinson, and therefore they are entitled to seventeen twenty-fifths of the premises and the defendants to the remaining eight twenty-fifths—the interest owned by Lownsdale at the date of his conveyance to Wilkinson.

In the case of *Fields* v. *Squires*, 1 Deady, 391, I held that by this partition the land was divided between the children of Nancy on the one hand and the heirs and vendees of Lownsdale on the other, according to the respective interests of the latter, without attempting to determine what they were, giving to the children in land and owelty what was deemed the equivalent of three-fifths of the premises, and to the heirs and vendees in land charged with the payment of this owelty what was deemed the equivalent to two-fifths of the same, and I am still satisfied with the ruling. And in *Davenport* v. *Lamb*, 13 Wall. 428, this view of the matter is taken and stated by Mr. Justice FIELD as a matter of course.

This partition was not an exchange of distinct parcels of land owned in entirety by either party, but a separation of undivided interests in a tract theretofore owned by the parties in common. The portions or parcels then ascertained and set apart in severalty to the children of Nancy, were, in contemplation of law, the very three-fifths which they took from the United States under the donation act, after the death of their mother, and in like contemplation the remaining two-fifths were the very portion of the premises which the heirs of Lownsdale inherited from him, subject, however, to the legal effect of the acts done and suffered by him concerning the same. Neither was the character or origin of the estate or title of the parties changed or affected by this decree and partition.

The heirs of Lownsdale took the two-fifth tract by descent from him, as his heirs, and as such were and are so far bound by his acts and conduct relating to the same as he would be himself, if living.

The rights of the parties in the premises must be determined, then, by the operation and effect of the deed to Wilkinson. The operative words in the premises of this instrument are "bargain, sell, release, convey, and quitclaim;" and, so far, it is only in legal effect a quitclaim deed,—one in which no covenant was implied,—and only served to pass the present interest of the maker. *Lamb* v. *Kamm*, 1 Sawy. 240; 2 Washb. Real Prop. 605-7. But it purports to be not only a quitclaim of all Lownsdale's right, title, and interest in the premises, whatever that might be, but of "all that piece or parcel of land" situated and bounded as therein stated.

The subsequent undertakings or agreements in the deed, while they cannot enlarge the effect of the granting clause, must be construed as referring to the subject-matter of the sale and quitclaim as therein stated; that is, a certain "piece or parcel of land." These undertakings, though in some respects awkwardly and obscurely

drawn, are easily divisible into three covenants, which may be substantially stated as follows: (1) That Lownsdale will warrant and defend "the possession" of that "piece or parcel of land" to Wilkinson, his heirs or assigns, against all claims made "through or by" himself; (2) that "said land" was a part of the claim that had been awarded to Lownsdale and "affirmed" by the secretary of the interior on July 13, 1860, and a patent therefor directed to be issued to him; and (3) that if such patent did issue to Lownsdale, the deed then made to Wilkinson should be considered as one with a general warranty of the premises to the grantee.

The contingency contemplated by the last covenant only arose as to the one-fifth interest which Lownsdale took in the west half of the donation as the survivor of his wife. For this a patent was issued to him after his death, which inured to his heirs, and it is admitted that the deed to Wilkinson had the effect to divest him of that interest, and that the same is now in the defendant. The second covenant was merely a personal one, having no prospective operation like a covenant of seizen, and did not run with the land. The first one, so far as it relates to a claim made by Lownsdale himself, is a mere personal covenant of non-claim, and would not estop any one but himself. But so far as it relates to a claim made "through" himself, it will estop any of his heirs or subsequent grantees from claiming the possession of any interest or estate in the premises which the deed purports to convey.

Whatever right or interest the plaintiffs claim in this suit—except the two twenty-fifths purchased by James P. O. from Smith—they must claim "through" Daniel H. Lownsdale or his heirs, and that brings them within the express words of the covenant, so far as the deed purports to affect the premises. And, as we have seen, it purports to sell and quitclaim the "land"—the whole estate or interest therein—without any qualification or reservation, and not of any partial, limited, or uncertain right or interest in the same.

The covenant of warranty is as broad as the subject-matter of the conveyance, and therefore estops the plaintiffs from maintaining any suit for the possession of any portion of or interest in the same, acquired through Lownsdale.

That it was the intention of Lownsdale to sell and convey to Wilkinson not only his then undivided interest in the "land," but also all that he might afterwards acquire therein, and particularly by partition with his co-tenants, is manifest from the fact that he warranted Wilkinson in the possession of the same, as against himself

and all persons claiming through him. For, if it was only intended to pass the interest which Lownsdale then had in the premises, be that much or little, the covenant of warranty was a useless and senseless act. 2 Washb. Real Prop. 665.

And I think that the price paid for the property—$600 for six lots 50x100 feet each, in the woods, in 1861—indicates that the sale was, as it purported to be, of the "land," and not an undivided two-fifths interest therein.

Three cases have been cited from the decisions of this court to show that the covenant of warranty in this deed does not affect any interest in the premises but that which Lownsdale then had. They are *Lamb* v. *Burbank*, 1 Sawy. 232; *Lamb* v. *Kamm*, Id. 238; and *Lamb* v. *Wakefield*, Id. 257.

In the first of these cases it may be said that the deed—a quitclaim, of March 8, 1850—purported to convey the land—"lot 4 in block 7." But the court held that this only passed the estate which Lownsdale than had in the premises—the bare possession under the laws of the provisional government. In coming to this conclusion, weight was probably given to the fact that all parties knew they were simply dealing with the possession, and to the further fact that the deed contained a covenant that if Lownsdale obtained title from the United States he would convey the same. The case was heard upon a demurrer to the bill alleging that the deed was fraudulent and void, and a cloud on the plaintiff's title, who claimed the property as heir of Lownsdale. What was said upon this point may be considered as *obiter*, as the defendant could protect himself under the covenant to convey, if the deed was valid. The other two cases are not in point. The deeds in both of them only purported to pass all "the right, title, and interest" of Lownsdale in the premises.

As to the two twenty-fifths interest purchased by James P. O. from Smith on February 23, 1869, for $1,050, the plaintiffs are not prevented by Lownsdale's covenants to Wilkinson from claiming the same. Lownsdale had conveyed this interest to Smith a year and eight days before he made the deed to Wilkinson, and neither she nor her grantee are in this respect affected by any subsequent sale or covenant of Lownsdale. But it is alleged in the answer that the deed to Smith is void as against Wilkinson, because it was not recorded until after March 11, 1861.

By section 27 of the act relating to conveyances, then in force in Oregon, (Code of 1854–5, p. 522,) it is provided that a deed not recorded within 30 days from its execution "shall be void against any

subsequent purchaser in good faith and for a valuable consideration" of the same property, whose conveyance shall be first recorded.

It does not appear from the answer but that Smith's deed was recorded within 30 days fróm its execution. It is only alleged that it was not recorded until after March 11th, which may be true, although it was recorded within 26 days from its execution. Nor is it alleged in the bill that it was ever recorded. But the plaintiffs have put the deed in evidence, and it appears therefrom that it was not recorded until February 12, 1862. No question is made but that Wilkinson was a purchaser in good faith and for a valuable consideration. Smith's deed was recorded after Wilkinson's and more than 30 days after its execution, and therefore the statute postpones it—declares it void as against Wilkinson's. The plaintiffs, as to this interest, now claim under this void deed against a grantee under Wilkinson, and their right is the same as if the suit was brought by Smith against Wilkinson.

The plaintiffs not having any interest in the premises which they can assert in this court against the covenant of their ancestor and grantor, the bill for partition is dismissed.