[No. 9286. In Bank. — June 29, 1886.]

JOHN McBROWN, Appellant, v. WILLIAM H. DALTON et al., Respondents.

Partition — Agreement between Co-tenants — Trust — Decree. — Pending a suit for the partition of a ranch, the plaintiff, who owned an undivided interest therein, conveyed his interest, except a specified portion reserved to himself, to the defendants, a committee of trustees acting on behalf of a league formed of certain tenants in common of the ranch, of which the plaintiff was a member. At the time of the conveyance, the defendants executed and delivered to the plaintiff a writing by which they consented and agreed that he should have set off to him by the decree in the partition suit the portion so reserved, and that they would use their influence to secure the same to him. By a subsequent transaction, to which the plaintiff was not a party, the defendants acquired title to the undivided interest of one Gates, a tenant in common in the ranch. The interlocutory decree in the partition suit, after determining the respective rights of the parties, adjudged that the interest of the plaintiff should be set off to him within the boundaries of the reservation made in his deed to the defendants. That portion of the ranch contained 3138 acres. Eight hundred and twenty-six acres of it were allotted and set apart to the plaintiff as his ascertained and adjudged interest; the remainder was allotted and set apart to Gates as his ascertained interest; while the interest acquired by the defendants under their deed from the plaintiff was allotted and set apart to them in a portion of the ranch wholly outside of the reservation. The final judgment, from which no appeal was taken, confirmed these allotments. Held, that the legal title acquired by the defendants to the portion of the reservation allotted to Gates was not held in trust for the plaintiff.

Id. — Action to Enforce Trust — Parties. — Held further, that the defendants held the legal title to the land, which they acquired from Gates and the plaintiff in trust for the members of the league, and that the plaintiff, as a member of the league, might enforce the trust in an action to which all the beneficiaries were parties, but not otherwise.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*James A. Waymire, Calhoun Benham,* and *G. F. & W. H. Sharp,* for Appellant.

*Edward J. Pringle,* for Respondents.

McKEE, J.—This case arises out of an original action in equity brought by the plaintiff against the defendants to compel a conveyance of the legal title to certain land and premises, which it is claimed they have received and hold in trust for him.

It appears by the complaint in the case that in the year 1865 the plaintiff was the owner of an undivided three-ninths interest in a ranch known as the "Bojorquez ranch," containing about twenty-five thousand acres; that in that year he sold and conveyed to the defendants "all his right, title, and interest" therein, except a specific portion, described by metes and bounds, which was then in his exclusive possession; that at the time of the sale the defendants stipulated, by an instrument in writing, that this portion should be allotted and set apart to him by the final decree of the court, in which there was then pending an action for the partition of the ranch; and that by the final decree rendered in that action the land thus reserved was in fact allotted and set apart for the defendants in this action, but they refuse to execute their trust by conveying it to him.

The defendants by their answer specifically deny the allegations of the complaint.

But it was proved on the trial of the cause, and the court below finds, that on the 19th of May, 1860, Horace Gates was the owner of an undivided one-ninth interest in the Bojorquez ranch, and commenced an action against several hundred persons named in the complaint in the action as defendants and tenants in common of the ranch, for partition of the same among them according to their respective interests; that one of these defendants was the present plaintiff, McBrown; that on the 31st of May, 1860, McBrown filed his answer to the complaint, in which he set forth that he was the owner in fee-simple absolute of an undivided three ninths of the ranch, derived by direct and mesne conveyances from the original owner; and that other persons, who were par-

ties defendants in the action, and were in possession of portions of the ranch, claiming interests therein by deeds from the same source of title, had no right or title adverse to him; and that the deeds under which they asserted their rights were ineffectual and void as to him.

After this answer was filed, McBrown and certain of the tenants in common, and defendants in the partition suit, about forty persons, including the defendants in this action, on the 1st of September, 1865, entered into an agreement for the formation of a land league to buy in for the use and benefit of the members of the league the undivided interests in the ranch claimed by " Horace Gates and other persons."

Under that agreement a league was organized, known as the "Bojorquez League," and the defendants in this action were appointed and acted as the executive committee of the league to make purchases. In that capacity the defendants purchased and acquired undivided interests in the ranch from Horace Gates and the plaintiff, McBrown. The purchase from McBrown was made on the 14th of March, 1865. On that day McBrown by deed conveyed to the defendants a portion of his interest in the ranch by the following description:—

"All his right, title, and interest, in law or equity, in possession or expectancy, in the ranch, . . . . reserving, saving, and excepting all that portion of said rancho lying and being in the southwest corner of said rancho, now in the possession of the said John McBrown, and more particularly described as follows, to wit: Commencing at the southwest corner of said rancho, and running thence easterly along and on the southwesterly boundary line of said rancho to the southeast corner of the said rancho; thence northerly along the easterly line of said rancho eight chains to the line of the Clark and Casanueva tract (so called); thence westerly along said line to the southwest corner of said Clark and Casanueva tract; thence northerly along the westerly line of said

tract to the northeast corner of John McBrown's fence
or a point on said line easterly therefrom; thence west-
erly along and with the line of said fence to the fence
inclosing the Potrero tract (so called); thence southerly
along and round the Potrero fence to the intersection of
John McBrown's fence with the Potrero fence; thence
westerly along and in the same direction of said fence to
the westerly line of said rancho; thence southerly along
the westerly line of said rancho to the place of begin-
ning."

Contemporaneously with the execution of the deed,
the defendants executed and delivered to McBrown an
instrument in writing which recited that, "in consider-
ation of said deed, we consent and agree that he, the said
McBrown, shall have set off to him in any decree of
partition of said ranch : . . . that portion of the ranch
reserved by said deed, . . . . and we will use our influence,
to secure the same to him, as the part reserved by him
out of the interest which he held in the ranch before his
deed to us."

After the defendants had in that manner acquired
title from McBrown, they had themselves substituted in
the partition suit as representatives of the interest thus
acquired; and they filed an answer in which they alleged
that at the date of the deed McBrown owned an undi-
vided three ninths of the ranch, derived by deeds from
three of the heirs at law of the original owner of the
ranch, less certain interests which had been conveyed to
other parties by his grantors *before* he had acquired their
rights, and less certain interests conveyed by McBrown
himself *after* he had acquired his rights; and that all the
interest which he had in the ranch at the date of the
deed vested in them, except the interest reserved in
the tract described in the deed; and they asked that they
be adjudged owners in fee of the said undivided three
ninths, less the interest therein, conveyed *before and
after* McBrown acquired his rights, and less the quantity

of the interest remaining in him in the tract reserved in the deed under which they claimed from him, and that the same be set apart to them, quantity and quality relatively considered.

As a defendant in the partition suit, McBrown himself continued to represent the interest in the ranch which remained in him after his deed to the defendants.

Upon the trial of the issues in the partition suit, the court found that Bartolome Bojorquez was the original owner of the Bojorquez ranch; that in 1851 he conveyed an undivided one-ninth interest in the ranch to each of his eight children, reserving an undivided ninth to himself; that Gates, the plaintiff in the action, derived title to an undivided one ninth thereof; that McBrown, the plaintiff in this action, derived title to an undivided three ninths thereof, of which he transferred by deed to W. P. Bullard an undivided one hundred and sixty-third interest, to L. A. Marshall an undivided one hundred and fifty-fifth interest, and to Dalton, Denman, Railsback, Martin, and Meacham, defendants in this action, by the deed of the 14th of October, 1865, an undivided seven thousand eight hundred and eighty-seven seventy-five thousand two hundred and sixty-fifths interest in the ranch, reserving to himself whatever interest remained in him as described in the deed. And by the interlocutory decree, it was adjudged that the said parties were respectively the owners in fee of the interests thus ascertained and settled, and were entitled to have the same set apart to them, quality and quantity relatively considered,—the interest of McBrown to be set apart to him within the boundaries of the portion of the ranch described in the deed of the 14th of October, 1865, as reserved.

That portion of the ranch contained 3138 acres. Eight hundred and twenty-six acres of it were allotted and set apart to McBrown as his ascertained and adjudged interest; the remainder, 2311 acres, was allotted and set apart

to Horace Gátes for his ascertained interest; while the interest acquired by the defendants Denman, Dalton, Railsback, Martin, and Meacham, from McBrown by the deed of the 14th of October, 1865, was allotted and set apart to them in a portion of the ranch wholly outside of the tract reserved by McBrown in that deed.

The final judgment confirmed and made effectual forever these allotments. The several parties to the judgment were adjudged to be the owners in fee of their respective allotments. From the judgment no appeal has ever been taken; it is therefore binding and conclusive upon all the parties to it.

But the judgment conferred no new or additional title upon the parties. It ascertained, awarded, and allotted to each his interest. Thereby the common possession which each had in the ranch before the rendition of the judgment became several and distinct; the unity of possession was severed, and each became entitled by the judgment to the exclusive possession of that part of the ranch which was allotted to him. McBrown therefore was the owner in fee of the tract of 826 acres allotted to him, and he is in the exclusive possession of it. No one questions his title to it. The defendants neither have nor claim any right or title to it, in trust or otherwise, adversely to him. Gates is the owner in fee of the remainder of the reserved tract described in the deed of the 14th of October, 1865, and he cannot be divested of his title or disturbed in the enjoyment of the land allotted to him, by a proceeding to which he is not a party.

It is true that the defendants here acquired Gates's interest in the ranch, in December, 1865, by a deed executed and delivered to them in consummation of a contract of sale of that interest entered into by him and them on the 26th of October, 1865,—twelve days after the execution and delivery of the deed of McBrown to the defendants. But the defendants acquired the interests conveyed to them by Gates's and McBrown's deeds by

different and distinct transactions between them and their grantors, who were with them at the time of the transactions tenants in common in the ranch, and parties to an action for its partition. The conveyances in which the transactions resulted changed the extent of the interests which each of the grantors and grantees named in the deeds had in the ranch at the commencement of the action, but they wrought no change in the legal relations of the parties to the action. The parties still remained tenants in common and actors in the action of partition, representing in their own rights the interests which they claimed to be still vested in them. On the trial of the action, those interests were ascertained and determined, set apart and allotted to them respectively; and the judgment rendered is conclusive and binding upon each as to the extent and allotment of his interest. No one of the parties to the judgment is entitled to a right to the land allotted to another, or to control the legal title to it, except as he may derive such a right from some conveyance of the title or agreement for the transfer of the title by way of sale or in trust, executed by him or those to whom the allotment has been made.

As to the land allotted to Gates, McBrown does not *personally* claim any right derived from any deed or agreement in writing executed by Gates, nor by any personal transaction between Gates and himself. His only claim is founded upon the instrument in writing which was executed and delivered to him by the defendants on the 14th of October, 1865, simultaneously with the execution and delivery of his deed to them.

But Gates's interest in the ranch did not form any part of the subject-matter of that instrument; the instrument had reference only to a portion of the ranch described as reserved for the allotment of McBrown's undivided interest in the ranch. Gates was no party to the instrument; the only parties to it were McBrown and the defendants.

Besides, the instrument does not contain words of trust or of contract for the sale or transfer of the title to the tract of land described in the instrument as reserved. The words in it express a mere promise by the defendants to use their influence to have McBrown's interest in the ranch allotted to him in that portion of it which he himself in his deed to them reserved for that purpose; and they express the consent of the defendants that that shall be done. But the defendants had no power or authority to ascertain and determine the interests of any tenant in common of the ranch, or to set it apart and allot it for him in any particular portion of the ranch; that could only be done under the law by the officers of the law in the action of partition; and it is not to be supposed that the parties to the instrument intended to attempt to influence the officers as to the extent of McBrown's interest or its allotment. Performance of an agreement for such a purpose could not be compelled by a court of equity. But be that as it may, the words used in the instrument are not words declaratory of a trust or expressive of a contract. No obligation, therefore, springs from the instrument binding the defendants to sell or convey the land to which it refers, or to procure the legal title to it in trust for McBrown; therefore the latter derives from the instrument no equitable right enforceable against the defendants in a court of equity.

The defendants, however, do hold the legal title to the land allotted to Gates. But as holders of that title they cannot be compelled to transfer it to McBrown, except upon the ground that they hold it in trust for him personally, or upon some agreement by them, founded upon an adequate consideration, for the transmission to him of the title. It is not claimed that they acquired or that they hold the legal title to the land in trust for him individually.

They did, as the executive committee of the Land League, purchase from Gates, and also from McBrown,

and acquired their titles, but they do not hold the titles thus acquired in trust for either McBrown or Gates. Both acquisitions were paid for with funds raised for that purpose by assessments levied upon the original interests in the ranch of the members of the league; and according to the provisions of the league agreement, the members who paid their assessments were entitled to share in the purchases in proportion to the amount of assessments levied and paid by them respectively; the defendants therefore hold the titles which they acquired from Gates and McBrown in trust for the members of the Bojorquez League.

The league agreement declares the purposes of the trust, and the powers and duties of the defendants as trustees in relation to the trust, and by it the rights of beneficiaries in the trust must be ascertained and determined. If, as a member of the league, McBrown has complied with the terms of the agreement under which the defendants purchased, there can be no question that he would be entitled with the other beneficiaries to share in the trust property, and to enforce the trust; but that must be done in a proper case, to which all the beneficiaries are parties, so that the rights of all may be settled and adjudged. (*Gates* v. *Lane,* 44 Cal. 392; *Bettis* v. *Townsend,* 61 Cal. 333.)  McBrown's single interest as a member of the league cannot be tried and determined in a collateral way in an action founded upon a separate and distinct instrument in writing to which the other beneficiaries were not parties.

We find no reversible error in the proceedings.

Judgment and order affirmed.

McKINSTRY, J., MYRICK, J., and SHARPSTEIN, J., concurred.

THORNTON, J., dissented.

Rehearing denied.