[No. 1438, June 14, 1912.]

JUAN M. RODRIGUEZ, et als., Appellees, v. LA CUEVA
RANCH COMPANY, Appellant.

### SYLLABUS (BY THE COURT).

1.  A decree in partition does not create a new title, but
merely segregates the right of possession, leaving the par-
ties with the same title under which they previously held.

2.  Sections 3180 and 3181, Comp. Laws, 1897, interpreted,

Rodriguez v. Ranch Co., 17 N. M. 246.

.and held not to contemplate or authorize a proceeding in partition against persons as unknown owners who are in the actual adverse possession of the lands sought to be .partitioned.

3. The owners of contiguous tracts of land may settle .a disputed boundary between them by parol agreement, which . agreement when followed by acquiescence, is binding upon ·the parties.

Appeal from the District Court of Mora County, New _Mexico.  Affirmed.

JONES & ROGERS, for Appellant.

Appellant has established its title to the land in controversy against all of the appellees.  Elkins et al. v. Arce et al., No. 632 in the District Court, County of Mora, ·Territory of New Mexico.

Under the laws of New Mexico a partition proceeding is a proceeding *in rem* and anyone claiming any interest in the land involved, at any time before final decree, may intervene and set up their rights.  Baca v. Anaya, 14 N. M. 382; Nash v. Church, 10 Wis. 303; Cook v. Allen, 2 .Mass. 461.

Decree could not be collaterally attacked by attempting to show that the defendants were not named, or that ·they were known to plaintiff, or that their names and ·claims could have been ascertained.  Foster v. Abbott, 8 Mass. 596; Rogers v. Tucker, 7 Ohio St. 418; Cole v. Hall, 2 N. Y. 625.

·The appellees have failed to establish any title or claim ·by adverse possession to the lands in controversy.  Jenkins v. Maxwell Land Grant Co., 107 Pac. 739; Gentile v. Kennedy, 8 N. M. 353; Hunnicutt v. Peyton, 102 U. S. 333; Deputrion v. Young, 134 U. S. 255; Smith v. Gale, 144 U. S. 526; Labory v. Los Angeles, etc., 32 Pac. 231; Peoria, etc., R. R. Co. v. Tamplin, 40 N. E. 960; Dillon ·on Municipal Corporations, sec. 974 (5th ed.) ; Hornbeck ·v. Westbrook, 9 Johnston 73; Turner v. Select Men of

Hebron, 23 Atl. 953; Jackson v. Corey, 8 Johnston 385; Jackson v. Hartwell, 8 Johnson 422; Mose v. Muncaster, 9 Wheat. 445.

The alleged agreement of October, A. D. 1884, is not a defense in this action. Hornbeck v. Westbrook, 9 Johnston supra; Bliss Code Pleading, sec. 364; 8 Ency. Pl. & Pr. p. 12, sub-div. 4; Croell v. Maughs, 7 Ill. 419; Lewallan v. Overton, 28 Tenn. 76; Holbrook v. Debo, 99 Ill. 372; Anderson v. Yoakum, 29 Pac. 500; People v. Miller, 44 N. W. 172; McInness v. Pickett, 3 So. 660; 16 Cyc. 693; Bruce v. Lake, 9 Kas. 202; Strong v. Powell, 20 S. E. 6; Lownsdale v. City of Portland, Deady (U. S.), 31 Federal Cases, No. 8579; Merriam v. Bourne, 9 Wall. 592; Peoria Ry. Co. v. Tamplin, 40 N. E., 960; Archer v. Helm, 12 So. 702; Birmingham v. City of Walla Walla, 13 Pac. 408; Pomeroy Eq. Juris. 805 (3rd ed.); Land v. Starr, (Deady.) 441; Federal Cases No. 8022.

C. A. SPIESS and S. B. DAVIS, JR., for Appellees.

The legal effect of the agreement made in settlement and adjustment of the disputed boundary followed by an immediate carrying out of its conditions and acquiesced in by both parties for twenty years. Kitchen v. Chantland, 130 Ia. 618; Cutler v. Callison, 72 Ill. 113; Steinhilber v. Holmes, 68 Kas. 607; Dierssen v. Nelson, 138 Cal. 394; Cavanaugh v. Jackson, 91 Cal. 580; Lindley v. Johnston, 42 Wash. 257; Purtle v. Bell, 225 Ill. 523; Tate v. Foshee, 117 Ind. 322; Uker v. Thieman, 107 N. W. 167; Pittsburg Iron Co. v. Lake Superior Iron Co., 118 Mich. 109; Roberts v. Fellman Dry Goods Co., 92 S. W. 1060.

No one is "unknown" within the meaning of our statute authorizing service by publication who is in fact known, as to whom knowledge is presumed, or who may by reasonable diligence be discovered. Ex parte Priest, Quick and Benjamin, 16 N. M. 692; Galbreath v. Teufel, 107 N. W. 48; Floto v. Floto, 213 Ill. 436; Title and Restoration Co. v. Kerrigan, 88 Pac. 356; American Land Restoration Co. v. Kerrigan, 88 Pac. 356; Bear Lake Co. v. Budge, 9 Idaho 703; Hill v. Henry, 66 N. J. Eq. 150; Town

of Hancock v. First Natl. Bank, 93 N. Y. 8; Bardwell v.
Collins, 44 Minn. 97; Shepard v. Ware, 46 Minn. 174;
Eayers v. Nason et al., 74 N. W. 408; Balse v. Kaulter,
75 N. W. 566; Robertson v. Mine & S. S. Co., 110 Pac.
1037.

### OPINION OF THE COURT.

PARKER, J.—This is an action to quiet title to a
tract of land in the Mora Grant. This was a Mexican
Grant to Carmen Arce and seventy-five others, and was
confirmed by act of Congress on June 21st, 1860, and was
patented by the United States on August 15th, 1876. In
1877 a suit for partition of the grant was instituted by
Stephen B. Elkins et al. against the said Carmen Arce et
al., in which suit, having acquired the interests of certain
of the original grantees of said grant, as well as certain
allotments of strips of land held in severalty therein, ap-
pellant intervened, and on May 26th, 1894, secured a
decree partitioning to it in severalty, a large tract of land,
which includes the tract in dispute. Appellees answered
the complaint in the present case, and alleged that in
1884 their ancestors, grantors and predecessors in inter-
est were the owners in fee simple of the land in dispute,
and were in the adverse possession of the same, and have
been such since about the year 1860; that appellant in 1884
commenced two suits against them, one suit to restrain
threatened trespass, and one action for damages for past
alleged trespass upon said land; that shortly after the
commencement of said actions, an agreement and con-
tract was entered into between the parties to the same,
fixing the boundaries between the contending parties,
and for the dismissal of the said actions; that appellant
thereupon built a fence upon the agreed line, and there
maintained the same until 1904, when it attempted to
enclose the lands in dispute; that neither appellees nor
their predecessors in interest were ever made parties to the
partition suit, and, at the time of the institution of the
same, and of the decree of partition to appellant, appellees
and their predecessors in interest were in adverse pos-
session of the land in dispute, claiming title in fee simple.

and so continued up to the bringing of the present action, except as such possession was interfered with by appellant. A demurrer to the answer was interposed, and overruled, and thereupon appellant replied to the answer denying the possession of the predecessors in interest of appellees prior to 1884; admitting the filing of the two actions against appellees for trespass; denying the execution of the contract of 1884 fixing the boundary; admitting the erection of the fence, on the line claimed to be the agreed line by appellees, and its maintenance until 1904; denying the ownership by appellees of the disputed land; denying that appellees had not been served with process in the partition proceeding; alleging the contract fixing boundaries, if it was made, was made without authority of appellant; and alleging that if executed, the contract was intended as a temporary adjustment of the line only until the title could be established in the partition proceeding.

It was stipulated that appellees were not made parties to the partition proceeding by name or otherwise, unless by the designation of "unknown claimants," and that they were not served with process unless affected by the published notice.

The court found that appellees or their predecessors in interest had been in the actual possession of portions of the strips claimed by them ever since 1860, and in 1884 were in possession of the same when the contract fixing the boundary was entered into. It further found that appellant constructed its fence upon the agreed line, and maintained the same until 1904, when it built the new fence enclosing the land in dispute. It also found that at the time of the bringing of the partition proceeding, appellees and their predecessors in interest were in the open and notorious possession of certain portions of the lands therein involved.

Appellant relies for its recovery upon the decree in the partition proceeding and urges that this decree vested in it a new, different, and outstanding title, originating

from a different source from that which it had prior to the decree, and that therefore the contract fixing the boundaries was not available against such title. This contention is palpably unsound.

A decree of partition does not create or manufacture a title, nor divest the title of one not actually or constructively a party to the suit. It operates by way of estoppel and prevents any of the parties from relitigating any of the issues presented for decision. Thus in Mc-Brown v. Dalton, 70 Cal. 89, 94, it is said:

"But the judgment conferred no new or additional title upon the parties; it ascertained, awarded and alloted to each his interest. Thereby the common possession which each had in the ranch before the rendition of the judgment, became several and distinct; the unity of possession was severed and each became entitled by the judgment to the exclusive possession of that part of the ranch which was alloted to him."

In Traver v. Baker, 15 Fed. 186, it is said:

"This partition was not an exchange of distinct parcels of land owned in entirety by either party, but a separation of undivided interests in a tract theretofore owned by the parties in common. The portions or parcels then ascertained and set apart in severalty to the children of Nancy, were, in contemplation of law, the very three-fifths which they had from the United States under the donation act after the death of their mother, and in like contemplation the remaining two-fifths were the very portions of the premises which the heirs of Lonsdale inherited from him, subject, however, to the legal effect of the acts done and suffered by him concerning the same. Neither was the character or origin of the estate or title of the parties changed or affected by this decree and partition."

In Wade v. Deray, 50 Cal. 86, it is said:

"It is well settled that a decree or judgment in partition has no other effect than to sever the unity of possession, and does not vest in either of the co-tenants any new or additional title. After the partition each had precisely the same title which he had before; but that

which before was a joint 'possession was converted into a several one.' "

In the latter case two of the tenants in common conveyed by deed to a third person all their right, title and interest in and to a particular portion of the general tract. Subsequently all of the tenants in common agreed to an amicable partition of the general tract amongst themselves, and upon the particular parcel to be set apart to each of them, and for the purpose of carrying the partition into effect, they all conveyed to a third person who was to reconvey in severalty the particular parcel agreed to be set apart to him, which was done. Thereupon the two tenants in common who had conveyed to the third person brought suit in ejectment against their grantee, claiming, as is claimed by appellant in this case, that the title which they received through the medium of the partition was a new and outstanding title, and that therefore it could be maintained against their former grantee The court said:

"In my opinion Estefana has acquired no new interest or title through the deed from Wright which she can assert against her grantee, Deray." It would seem that this case is directly in point, and answers every argument advanced by appellant in support of the proposition now under discussion. See also, Utterback et al. v. Terhune, 75 Ind. 363; Haddon v. Hemingway, 39 Mich. 615; McBain v. McBain et al., 15 Ohio State, 337; Harlan v. Langham, 69 Pa. State, 235.

Counsel for appellant argue that the court had jurisdiction of the appellees in the partition proceeding by reason of the allegation therein as to unknown owners, and the service of process by publication, and that, they, being parties, are necessarily bound by the judgment.

It is to be remembered that appellees and their predecessors in interest were not named as defendants, although it is apparent that when appellant intervened, and when it took its decree, it knew of their claims. It is true that appellant was not the plaintiff in the partition proceeding, being an intervenor, but it became

an actor and set up its claim and title and obtained affirmative relief. It therefore became chargeable with all of the infirmities of the proceeding. Plaintiffs, in the bill for partition allege that they were informed that various other persons made claim to portions of the grant, but that who they were or what their names were, plaintiffs were unable to state, not knowing same. If this allegation referred to appellees or their predecessors in interest, it certainly was insufficient. They were at the time in the open and notorious possession of the lands now in dispute, and their names could have been easily ascertained. Can it be said, then, that appellees were unknown claimants within the meaning of the partition statute so as to be affected by the published notice? We think not.

Sections 3180 and 3181 of the Compiled Laws of 1897, under which the partition proceedings were had, are as follows:

Sec. 3180. "Every person having an interest in the premises, whether having possession, or otherwise, shall be made a party to such petition, and in cases where one or more of such parties shall be unknown, or the share or quantity of interest of any of the parties, is unknown to the petitioners, or when such share or interest shall be uncertain or contingent, or when there may be any other impediment, so that such parties cannot be named, the same shall be so stated in the petition."

Sec. 3181. "All persons interested in the premises of which partition is sought to be made, whose names are unknown, may be made parties to such partition by the name and description of unknown owners or proprietors of the premises, or as unknown heirs of any person who may have been interested in the same."

It is apparent from a reading of the foregoing sections, it seems to us, that it was not the intention of the legislature to provide for the making of parties by the name of unknown owners, and for the service of process upon them by publication when they in fact were in the open and notorious adverse possession of a part of the premises. The test seems to be pointed out in sec. 3180,

that there must be some impediment so that the parties cannot be named before resort may be had. to a procedure so well known to be ineffective to bring home notice to interested parties. In the partition proceeding, the plaintiffs and defendants named were claiming to be the owners of the property and to have title to the same. They had the means, as indeed, we believe it was their duty, to ascertain the names of all persons actually holding adverse possession of any of the property claimed which was the subject matter of the litigation. And so we conclude that it was not the intention of the legislature to allow the rights of claimants to land, situated as the appellees and their predecessors in title were, to be foreclosed of their rights by a proceeding in which they are not named, and in which the only service obtained upon them was by publication. To hold otherwise would be to say that the plaintiff in a partition proceeding may sit in his office, refrain from all inquiry as to the persons claiming any part of the estate sought to be partitioned, pursue no sources of information of which he may be aware; and, because in fact he does not actually know the names of the adverse claimants to the estate sought to be partitioned, he may proceed against them as unknown owners, and thereby deprive them effectually of all of their rights and property. Such we cannot believe was the intention of the legislature.

This construction of the statute is not without support by the decisions of the territorial court. In Priest et al v. Board of Trustees of the Town of Las Vegas, 120 Pac. 894, the appellants sought to secure the benefit of a decree quieting the title of the appellants to a portion of the Las Vegas Grant in which the proceeding was against unknown owners, and service of process by publication. The record title in that case stood in the name of the Town of Las Vegas, and in that particular differs from the case at bar, some of the appellees in this case not being shown to have had recorded titles. But in principle we can see no difference between the two cases. In that case the court was construing the statutes of the territory in regard to proceedings to quiet title, which are

in substance and effect the same as the partition statute in regard to proceedings against unknown owners, and held that such statutes must be strictly construed, and that the decree in that case was unavailing as against the town of Las Vegas.

Galbreath v. Teufel et al., 107 N. W. 48, was an action to determine adverse claims to real estate, like our action to quiet title, and the owner of the tax title was proceeding against the owners of the record title, both of whom were deceased, and all other persons unknown, claiming any estate or interest in the premises. It appeared in the case that the plaintiff had actual knowledge of the death of the owners of the record title, and of the existence of their respective heirs. The court said:

"Under such circumstances, a person cannot be permitted to assert ignorance of facts which reasonable inquiry would disclose. * * * It is too plain for argument that the proceedings resulting in this judgment, were a gross abuse of judicial process, even if it be conceded that they were in form, 'due process of law.' The real persons whose rights were sought to be barred by the judgment were not named, but were included in a general designation 'unknown,' although they were in fact known to the plaintiff, or at least ought to have been. The two ostensible defendants named were known to be out of existence; but that fact was not disclosed. Copies of the summons and complaint were mailed addressed to the last known residence of the dead men. The real defendants being ostensibly 'unknown' the necessity of mailing copies of the papers to them was avoided. In this way the probability of notice of the pending action ever reaching the real defendants before the expiration of a year, was reduced to the minimum. To permit a judgment based on such procedure to stand, would be a reproach to the administration of justice."

Title & Document Restoration Co. v. Kerrigan, 88 Pac. 356, was a proceeding in mandamus against the Judge of the Superior Court of San Francisco, to compel him to issue an order for publication of summons. The proceeding arose under an act of the legislature passed to restore

the records in San Francisco after the earthquake and
fire. The Judge of the Superior Court had refused to
issue the order upon the ground that the act violated the
"due process of law" clause of the Federal Constitution,
but the Court upheld the act upon the ground that it did
require personal service of summons or notice upon resi-
dents of the state, and was therefore constitutional. In
the discussion the Court uses the following language:

"That, as to such defendants, (resident claimants whose
existence, names and places of abode were all known to
the plaintiff or petitioner) a service by publication is not
sufficient to constitute due process of law, in a proceed-
ing not strictly in rem, must be admitted. And in this
connection it may be well to notice the contention of re-
spondents, that, by the terms of the act now under con-
sideration, the plaintiff in the proposed action may in-
clude among 'unknown claimants' those who, with reason-
able diligence on his part, might have become known to
him. It is no doubt true that so far as substituted ser-
vice upon a class of unknown claimants is permitted to
all, in proceedings which are merely quasi in rem, it rests
upon the ground of necessity, and that this necessity will
not justify the omission of personal service upon all who
could with reasonable diligence be ascertained and found.
* * * We have no doubt that, where the statute is thus
careful to secure actual notice to known claimants, it
should not be construed as intended to permit a plaintiff
to wilfully or negligently close his eyes to the means of
knowledge and thus secure a decree by publication and
posting alone, as against persons whose identity he might
have learned by the use of due effort. For the purposes
of this statute the adverse claimants whom plaintiff 'knows
or of whom he has been informed' include all as to whom
he would by reasonable inquiry have had knowledge or
information."

Bear Lake Co. v. Budge, Judge, 75 Pac. 614, was a
case of prohibition against a judge of the district court
of the state of Idaho to prevent him from further pro-
ceeding in a case to adjudicate water rights. The case
proceeded upon the theory that the statute providing for

Rodriguez v. Ranch Co., 17 N. M. 246.

the proceeding violated the "due process of law" clause
of the Constitution in that it did not provide for personal
service on known defendants residing in the state.  The
Court said:

"It cannot be said that the section under consideration
takes great precaution to discover the unnamed defendants
residing in the county where the suit is pending.  It fails
to require the personal service of summons on known de-
fendants residing in such county, and is in conflict with
those provisions of our state constitution, as well as the
constitution of the United States, which provide that no
person shall be deprived of life, liberty or property ex-
cept by due process of law.  Those provisions prohibit
the legislature from dispensing with the personal service
of summons when it is practicable.  That is required to
give courts jurisdiction under the general laws of the
state in regard to procedure in suits brought to quiet title,
or to settle adverse rights."

In American Land Co. v. Zeiss, 219 U. S. 48, the same
statute passed upon by the California court in 88 Pac. 356,
supra, was considered by the supreme court of the United
States, and the same construction reached.  Other cases
bearing upon this question and generally upon the ques-
tion as to what kind of service of process is required under
the constitution, are cited as follows:  Hill v. Henry, 66
N. J. Eq. 150; Bardwell v. Collins, 44 Minn. 97; Shep-
herd v. Ware, 46 Minn. 97; Eayrs v. Nason, 74 N. W.,
408; Bolse v. Kautter, 75 N. W. 566; Robertson et al. v.
Mine & Smelter Supply Co. et al, 110 Pac. 1037.  See
also Cooley Con. Lims. 579 et seq., 583, 584.

In some of these cases the statutes under consideration
have been held unconstitutional for the reason that no
provision has been made for personal notice to residents
of the state or, rather, provision is made in the statutes
for constructive service upon residents of the state.  In
others, the statutes have been upheld because construed to
require service upon residents of the state, when known,
or when with reasonable diligence they could be ascer-
tained.

We therefore hold, as before stated, that the statute

under consideration requires diligence and inquiry on the part of the plaintiff to ascertain the names of all persons holding adverse possession of portions of the lands sought to be partitioned, and requires personal service upon them, and is therefore constitutional. When the parties to a partition proceeding have either actual knowledge of such claimants, or means of knowledge, a proceeding against such adverse claimants as unknown owners, is without jurisdiction and a nullity as to them.

Concluding, as we do, that the statute did not authorize a proceeding against the appellees in this case as unknown owners, it becomes unnecessary to decide specifically whether such a statute, if it did so provide, would be constitutional.

Appellant cites two cases in support of the contention that a partition statute, assuming that it authorizes a proceeding against the appellees as unknown owners under the circumstances heretofore mentioned, would still be a valid legislative provision. They are the cases of Nash v. Church, 10 Wis. 303; and Cook v. Allen, 2 Mass. 461. Both of these cases were decided before the adoption of the 14th amendment to the Federal Constitution, and this fact may possibly account for the decisions. In the Cook case, the right to possession only was determined, leaving the parties free to bring a new proceeding to establish their rights under their title. In the Nash case, the court itself seems to have been shocked by the consequences of upholding the statute which authorizes such a proceeding. It says:

"The idea that, under our statute for the partition of real estate, a party in the quiet and undisturbed possession of his property, could be stripped of it by judicial proceedings of which he was entirely ignorant, struck me as being so flagrantly and enormously unjust and oppressive, that I thought it could not be the law. The taking of a valid title of a person in possession from him, and transferring it to another having no right to it, by a proceeding of which the owner has no knowledge, and in which his title was not directly adjudicated against him nor the attention of the court directly called to it,

exhibits a most alarming defect in justice." Both of these cases were cited in the briefs in the Priest case, supra, and were disregarded by the court, but we need not discuss them further, in view of our interpretation of the partition statute.

Appellant complains that to allow the defense, set up by the appellees, to be put forward, amounts to a collateral attack upon the decree in partition. It undoubtedly is a collateral attack, but we know of no legal objection to such an attack in any case where there is a want of jurisdiction. Such a defense has been allowed in many cases. Bolse v. Kautter, et al. 75 N. W. 566; Eayrs et al. v. Nason et al., 74 N. W. 408.

We find the appellant, then, in the same position in regard to title, as against appellees, as it was prior to the decree in partition. That decree put it in no better position as against them, in regard to title, than it was before. The most that can be said for the decree is that, as against parties to the proceeding, it cut off their rights and would enable appellant as against a stranger to assert the title and right to possession in severalty, relieved of the claims and rights of its former tenants in common. At this point appellant is confronted with its contract of 1884, upon which appellees rely. The contract is as follows:

"THIS AGREEMENT, Executed this 3rd day of October, A. D. 1884, between Juan Andres Mascarenas, Juan Antonio Montoya, Jose Inez Pacheco, Refugio Martinez and Jose Mestas, a committee named and authorized and entrusted with the authority and rights of the settlers of the Llano del Coyote and Rafael Romero, President of the La Cueva Ranch Company, working for and representing the rights of said Company:—

WITNESSETH: That said parties for themselves, and for the parties interested represented by them, have agreed and mutually bind themselves to abide by the boundary line between their respective lands in the valley and Llano del Coyote as today marked with cedar posts and a ploughed furrow. And, moreover, the parties bind themselves, as soon as possible, to withdraw the various

suits now pending between them in the District Court
of the First Judicial District, said Rafael Romero binding
himself to pay all the costs which have accrued to this
date in said suits.

IN TESTIMONY WHEREOF, said parties now place
their hands and seals to this instrument.

(Signed)

JUAN ANDRES MASCARENAS,
JUAN ANTONIO MONTOYA,
JOSE INEZ PACHECO,
REFUGIO MARTINEZ,
JOSE MESTAS,
RAFAEL ROMERO."

It is argued by appellant that this contract is unavail-
ing to appellees for the reason that neither of the parties
to the contract, at least appellant, had title to the land
when the contract was made. It appears that both ap-
pellant and appellees were in possession of strips of land
under allotments by either the Mexican Officials prior
to 1846, or subsequently by Probate Judges. The strips
of appellant commenced on the Mora River and ran east-
wardly, and the strips of appellees commenced on the Co-
yote River and ran westerly. There was a conflict be-
tween these respective claims at the northern boundary of
the land claimed by appellant. Appellant introduced sun-
dry deeds in evidence showing the acquisition of various
of these strips of land, and it appears from the evidence
which it introduced that the particular lands in dispute
were conveyed by these conveyances.

Some of the appellees show an ancient paper title, some
shortly following the agreement, filed for record claims
of title under the act of April 3, 1884, Comp. Laws of
1884, sec. 2747, and some show no paper title at all; but
all rely upon adverse possession for more than the statu-
tory period.

Appellant urges that there was no sufficient allegation
or proof of adverse possession by appellees and their pre-
decessors in interest, but the court found otherwise. It
does appear, at any rate, that all of appellees were in
the actual adverse possession of portions of strips of land,

claiming the whole, and were exercising such authority or dominion over the same, either individually or collectively, as to cause appellant to bring actions against them for trespass.    To adjust the dispute as to boundaries, which arose between the parties, they met, contracted with each other as to the location of the boundary, each surrendering a portion of what he claimed, the boundary was established and was acquiesced in for about twenty years. So, on May 5th, 1906, the date of the filing of the bill in this case, the appellant had lost title by adverse possession, as to all those of the appellees who held by adverse possession under paper title, or color of title.    As to those of the appellees not showing paper title or color of title, and who relied upon adverse possession alone, it may be said that they made claim of right at the time of execution of the contract, and have ever since, and now make the same claim.    We do not deem it necessary to make a critical examination of the title and rights of appellees at the time of making the contract fixing the boundaries.    They made a contract equally binding on themselves and appellant, and for the purposes of this case, may be treated as owners.    Under such circumstances, it was competent for the parties to fix a boundary which would be binding upon them.    Thus it is said in Kitchen v. Chantland, 130 Iowa 618:

"Contrary to defendant's contention the rule of law is well settled, that if there be doubt or uncertainty or a dispute as to the true location of a boundary line the parties may by parol fix a line which will, at least when followed by possession with reference to the boundary so fixed, be conclusive upon them, although the possession may not have been for the full statutory period.    Definite settlement of the boundary is a sufficient consideration for the agreement.    Such an agreement is not within the statute of frauds."    And in Cutler v. Callison, 72 Ill. 113, "While it may be regarded as well settled that the title to real estate cannot be transferred by parol, yet it is a principle well established that the owners of adjoining tracts of land may, by parol agreement, settle and establish permanently a boundary line between their lands,.

which, when followed by possession according to the line so agreed upon, is binding and conclusive not only upon them but their grantees." In Steinhilber v. Holmes, 68 Kan. 617, 75 Pac. 1019: "Where parties by mutual agreement fix boundary lines, and thereafter acquiesce in the lines so agreed, they must be considered as the true boundary lines between them, even though the period of acquiescence falls short of the time fixed by statute for gaining title by adverse possession." And in Lindley v. Johnston, 42 Wash. 275, 84 Pac. 822: "It is conceded by all the authorities that, where adjoining landowners locate a division line and agree that it shall be deemed the boundary line this will bind them, notwithstanding the same may not, as a matter of fact, be the correct line —assuming, of course, that said agreement is fair, conscionable, and free from fraud." See also Dierssen v. Nelson, 138 Cal. 394, 71 Pac. 456; Purtle v. Bell, 225 Ill. 523, 80 N. E. 350; Uker v. Thieman (Iowa) 107 N. W. 167; Tate v. Foshee, 117 Ind. 322, 20 N. E. 241; Pittsburg Iron Co. v. Lake Superior Iron Co., 118 Mich. 109, 70 N. W. 395; Roberts v. Fellman Dry Goods Co., (Tex.) 92 S. W. 1060; 5 Cyc. 931, 935.

In opposition to this conclusion, counsel for appellant cite Crowell v. Maughs, 7 Ill. (2 Gill.) 419, and Lewallen v. Overton, 28 Tenn. (9 Humph.) 76. In the former case, the title was in the United States at the time of the fixing of the boundaries, and afterwards the plaintiff acquired the title. Defendant offered to prove that the plaintiff and a third party had fixed a boundary between them at a time when neither had title. The court held the contract not binding on the plaintiff, the subsequent grantee from the government. That case differs from the case at bar. There it was sought to charge the land with a contract which was made with a third party not in privity with either of the parties, and made at a time when neither party had more than a mere tenancy at sufferance. Here it is sought to charge the land with a contract made between the parties to this action at a time when the appellant had as much title as it now has, and when appellees were all claiming title. In the latter case

the true owner agreed by parol upon a boundary with a stranger having no title, and the plaintiffs deed was in accordance with the agreed line.    It was there sought, ·as in the former case, to charge the land with a contract made with a stranger having no title at the time, and no privity with the plaintiff.    In the case at bar appellees would, in any event, be bound by their contract so long as their claim to the land was based upon their then rights, which rights they are here still asserting.

Counsel for appellant devote some considerable time in the briefs to the proposition that the contract fixing the boundary was, in legal contemplation, the equivalent ·of a quit claim deed.    But, even so, the transaction was valid as against the appellant, it having secured partition to it in severalty of a larger tract including that set over to the appellees by the fixing of the boundary.    Gates v. Salmon, 35 Cal. 576.

For the reasons stated, the judgment of the lower court will be affirmed, and it is so ordered.

