1996–NMSC–078

930 P.2d 153

**Leo V. SIMS, et al., Plaintiffs–Appellees,**

**v.**

**Aline SIMS, individually and as personal representative of the Estate of George P. Sims, deceased, Defendant–Appellant.**

**No. 21818.**

Supreme Court of New Mexico.

Dec. 6, 1996.

Law Offices of R.E. Richards, P.A., R.E. Richards, Hobbs, Heidel, Samberson, Newell & Cox, C. Gene Samberson, Lewis C. Cox, III, Lovington, for Appellant.

Hinkle, Cox, Eaton, Coffield & Hensley, Stuart D. Shanor, Richard E. Olson, Rebecca Nichols Johnson, Roswell, for Appellees.

Jan Unna, Santa Fe, for amicus curiae Commissioner of Public Lands.

## OPINION

FRANCHINI, Justice.

1 Aline Sims appeals a judgment partitioning two ranches. She raises seven issues on appeal. We affirm the trial court on all issues.

## I. FACTS

2 This case concerns a dispute among five family members and the resultant partition of properties that they owned as tenants-in-common. The family members hold two ranches in Lea County, New Mexico. The S & D Ranch consists of approximately 12,262 deeded acres and a state grazing lease of 160 acres. The Sims Brothers Ranch consists of approximately 25,722 deeded acres, a state grazing lease of 7,081 acres, and a Federal Bureau of Land Management Permit to lease 40 acres. The five family members—Leo V. Sims, the Estate of Elizabeth Daugherty, the Estate of Ellie Spear, Winnie Kennanand, and Aline Sims individually and as personal representative of the

estate of George P. Sims—own various percentages of undivided shares in the two ranches and are co-lessees of the state and federal grazing leases.

3 Business disagreements concerning management of the ranches culminated in the filing, on March 22, 1983, of this lawsuit against Aline Sims by the other four family members. The four Plaintiffs—the Sims Group—requested that the two ranches owned by the parties as tenants-in-common be partitioned. In her Answer and Counter-claim, Aline Sims also requested that the ranches be partitioned.

4 After several years of legal maneuvering that is irrelevant to this case, Aline Sims, on November 19, 1990, filed a motion in which she stated that there was no issue of material fact as to the interests held by each party in the two ranches. She requested a judgment by the court that would establish the parties' respective interests for the purposes of the partition action. In this request she omitted reference to the state and federal grazing leases. Apparently this was because the parties already disagreed as to whether the New Mexico Partition Act permitted leaseholds to be partitioned.

5 On December 28, 1990, Aline Sims filed a motion asking the court to appoint three commissioners whose duty, under the Partition Act, would be to examine the property and each co-tenant's interest therein, and to write a report recommending how the property should best be divided. *See* NMSA 1978, § 42–5–6. The Sims Group, in its reply to this motion, agreed to the appointment of commissioners.

6 On January 4, 1991, the court entered an Order (January Order) finding that there was no dispute between the parties as to the ownership of the Sims Brothers Ranch and the S & D Ranch. The court recognized the validity of the description provided by the five litigants of their percentage of ownership for each parcel of land. However this Order made no reference to the state and federal grazing leases and made no determination about whether they could be partitioned.

7 On November 5, 1991, the January Order was modified by a second Order (November Order) that formally permitted the Sims Group to pool their interests in the two ranches. The Sims Group had previously informed the court of their desire to pool their interests and be considered a single ownership group for the purposes of partition. Aline Sims objected to this arrangement, claiming it violated the Partition Act. In the November Order, the trial court determined the pooling was lawful, subject only to the filing by the Sims Group of a formal "Declaration of Intention to Pool Interests," in which they acknowledged that they understood the implications of their request. This Declaration had been filed August 7, 1991.

8 In the November Order, the court also found that certain lands situated in Texas that belonged to the S & D Ranch had been inadvertently omitted from the property descriptions in the January Order. The court directed that the January Order be modified to include the descriptions of those Texas lands. The court also noted that, contrary to Aline Sims' assertions, the January Order was not final but rather was interlocutory, and the court retained jurisdiction to amend and modify that Order as the circumstances of the case required.

9 On January 15, 1993, the three commissioners were selected, and the court issued its "Instructions to Commissioners." Over Aline Sims' objections, these instructions directed the commissioners to devise two plans, one that included and one that excluded the partitioning of the state and federal grazing leases.

10 The commissioners completed their evaluation and filed their report on March 29, 1993. Their recommendations included an award to the Sims Group of all of the S & D Ranch and 15,946 acres of the Sims Brothers Ranch. Aline Sims received the remaining 16,934 acres of the Sims Brothers Ranch. However, the commissioners determined that the lands could not be divided in strict proportion to the interests of the two parties. The Sims Group received property of greater value than their proportionate interest. Therefore, to make up the difference, Aline Sims received a cash payment—known as an owelty award—of $26,429.00.

11 Aline Sims filed her objections to the "Report of the Commissioners" on May 3, 1993, and at the subsequent hearings she detailed her complaints. On November 9, 1993, the court filed its decision rejecting all of Aline Sims' objections to the commissioners' report. On October 29, 1993, the court entered its "Judgment Partitioning Real Property" in which it substantially adopted the recommendations of the commissioners.

12 On appeal Aline Sims raises—in a somewhat different order than we present here—seven issues: 1) whether the New Mexico Partition Act precludes the partitioning of leaseholds; 2) whether the state Commissioner of Public Lands is an indispensable party to the partitioning of state-owned land; 3) whether the trial court erred in modifying an interlocutory order; 4) whether the four members of the Sims Group could lawfully pool their interests in the two ranches; 5) whether the partition order was prejudicial to the rights of Aline Sims; 6) whether the trial court improperly modified the recommendations of the commissioners; and 7) whether the commissioners failed to follow the instructions of the trial court. For the reasons set out below, we affirm the trial court on all seven issues.

## II. LEASEHOLDS MAY BE PARTITIONED

### A. Statutes in Question

13 The partitioning of property in New Mexico is governed by NMSA 1978, §§ 42–5–1 to –9 (Orig.Pamp. & Cum.Supp.1996), unofficially called the Partition Act. Section 42–5–1 describes the circumstances under which property may be partitioned:

When *any lands, tenements or hereditaments* shall be *owned* in joint tenancy, tenancy in common or coparcenary, whether the right or title be derived by donation, grant, purchase, devise or descent, it shall be lawful for any one or more persons interested, whether they be in possession or not, to present to the district court their complaint in chancery, praying for a division and partition of such premises, according to the respective rights of the parties interested therein, and for a sale thereof, if it shall appear that partition

cannot be made without great prejudice to the *owners.*

Section 42–5–1 (emphasis added).

14 Aline Sims claims that in order for the trial court to partition state or federal grazing leases, such leases must be included within the definitions of "lands, tenements and hereditaments" and "real estate." But these expressions, according to Aline Sims, pertain only to interests in real property. She contends that leaseholds, because they are considered personal rather than real property, cannot be partitioned under New Mexico law. She supports her argument by pointing to several New Mexico cases stating that leaseholds are personal and not real property. *See, e.g., Western Sav. & Loan Ass'n v. CFS Portales Ethanol I, Ltd.,* 107 N.M. 143, 144, 754 P.2d 520, 521 (1988) ("A leasehold or a term for years is a chattel, not real property, no matter how long its term."); *Swayze v. Bartlett,* 58 N.M. 504, 512, 273 P.2d 367, 372 (1954) ("So far as the state lease in question is concerned, it is a chattel and not real property."); *Ellison v. Ellison,* 48 N.M. 80, 82, 146 P.2d 173, 174 (1944) (stating a leasehold is a chattel); *State ex rel. Truitt v. District Court,* 44 N.M. 16, 31, 96 P.2d 710, 719 (1939) (concluding a leasehold is personal property); *American Mortgage Co. v. White,* 34 N.M. 602, 605, 287 P. 702, 703 (1930) ("Terms for years, of grazing lands ... are chattels real, falling within the classification of personal property and governed by the rules applicable to other kinds of personal property.").

15 Furthermore, Aline Sims argues that, under Section 42–5–1, the persons requesting partition must be the "owners" of the land in question. Since lessees are by definition not the owners of the land that they are leasing, she alleges that the statute precludes lessees from requesting partition of that leasehold.

16 Aline Sims finds additional support for these claims in other language from the Partition Act. For example, she notes that Section 42–5–6 authorizes the court to appoint commissioners who are empowered to "make partition of said *lands, tenements and hereditaments,* assigning to each party his share by metes and bounds." (Emphasis added.)

She contends therefore, that Section 42–5–6 applies only to real property. Similarly, she notes that Section 42–5–7(A) refers to "owners" and mentions only "real estate" as being subject to partition:

> Should the commissioners be of the opinion that the *real estate* is so circumstanced that a partition thereof cannot be made without manifest prejudice to the *owners* or proprietors of the same, they shall proceed to appraise the *real estate* at its cash value at the time, deducting the amount of all liens and encumbrances against such *real estate,* and the commissioners shall so report to the court and file with their said report a written appraisal.

Section 42–5–7(A) (emphasis added). Aline Sims alleges that the drafters of the original Partition Act deliberately restricted all but real property from being partitioned. She supports this position with theories that we will analyze below about the legislative history of the New Mexico Partition Act.

■ 17 The essence of Aline Sims' argument is that the long-standing common-law equitable partition powers of the court have been abrogated by the legislature. As we discuss below, courts have historically, at common law, possessed equitable powers to partition virtually any type of property. Aline Sims claims that the literal language of the statute takes away these powers and restricts New Mexico courts to partitioning only real property. She thus urges what she deems to be a plain meaning interpretation of the Partition Act. The plain meaning rule of statutory construction states that "[w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990). Aline Sims claims that, under the plain meaning of the statute, partition is a remedy limited exclusively to the "owners" of "lands, tenements, and hereditaments" and "real estate." Those who possess leaseholds or other personal property are deprived of this remedy.

18 Aline Sims further invokes another rule of statutory construction, stating that "[s]tatutes in derogation of the common law must be strictly construed." She argues that the plain meaning of the statute, by expressly limiting partition to real estate, is in direct conflict with the courts' traditional common-law equitable powers. A strict interpretation requires the conclusion that these common-law powers have been nullified. *See State ex rel. Miera v. Chavez,* 70 N.M. 289, 291, 373 P.2d 533, 534 (1962) (discussing statutes in derogation of the common law).

19 The Sims Group counters that nothing in the statute clearly revokes the courts' historical powers to partition all kinds of property including leaseholds and other personal property. The Sims Group suggests that only by express intent could the legislature abrogate such common-law equitable powers, and the legislature has indicated no such intent.

20 We conclude that the Partition Act does not abrogate the common-law equitable judicial partition powers. We agree with The Sims Group that the legislature did not intend to limit the remedy of partition exclusively to real property.

### B. Standard of Review

■ 21 When attempting to unravel a statutory meaning we begin with the presumption that the statutory scheme is comprehensive. *Christmas v. Cowden,* 44 N.M. 517, 529, 105 P.2d 484, 491 (1940) ("[I]t is the policy of our courts to first search our own statutes for commitments upon a question...."). In urging the plain meaning rule in this case, Aline Sims is urging us to conclude that the Partition Act is comprehensive and self-contained. However, the plain meaning rule does not require a wooden literal interpretation of all statutory language. *Cummings v. X–Ray Assocs.,* 121 N.M. 821, 834, 918 P.2d 1321, 1334 (1996). This rule "is only a primary source of understanding, not conclusive, and it must yield on occasion to an intention otherwise discerned in terms of equity, legislative history, or other sources." *Chesapeake & Ohio R.W. v. United States,* 571 F.2d 1190, 1194 (D.C.Cir.1977). If the intentions of the legislature suggest a different meaning from that suggested by the plain meaning of a statute, we will not base our determination upon the statute's literal

language. *Cummings,* 121 N.M. at 834, 918 P.2d at 1334.

¶ 22 Aline Sims has suggested that because the Partition Act is in derogation of the common law, we must apply rules of construction that limit the authority we are willing to attribute to the common law. *See Miera,* 70 N.M. at 291, 373 P.2d at 534 (discussing strictly construing statutes in derogation of common law). However, we believe Aline Sims seriously misreads this rule of construction. This rule means that "[t]he courts will not add to such a statutory enactment, by judicial decision, words which were omitted by the legislature." *Id.* Aline Sims's interpretation would tilt the balance in favor of a statute that on its face seems to conflict with the common law. But we believe this rule is meant to assure that statutes will be read strictly so that no innovation upon the common law that is not clearly expressed by the legislature will be presumed. *See Shaw v. Railroad Co.,* 101 U.S. 557, 565, 25 L.Ed. 892 (1879); *Miera,* 70 N.M. at 291, 373 P.2d at 534. A statute will be interpreted as supplanting the common law only if there is an explicit indication that the legislature so intended. *See* 2B Norman J. Singer, *Sutherland Statutes & Statutory Construction* § 50.01 (1992) [hereinafter *Sutherland* ].

¶ 23 We adopt a strict rule that the common law must be expressly abrogated by a statute because, when determining the meaning of a statute, courts will often construe the language in light of the preexisting common law. *See* 2A *id.* § 45.02. The common law fills in gaps not addressed by a statute.

> In other words, the common law, upon its adoption, came in and filled every crevice, nook and corner in our jurisprudence where it had not been stayed or supplanted by statutory enactment, in so far as it was applicable to our conditions and circumstances.

*Beals v. Ares,* 25 N.M. 459, 486, 185 P. 780, 788 (1919). On the other hand, when legislation directly and clearly conflicts with the common law, the legislation will control because it is the most recent statement of the law. *Anderson v. Federated Mut. Ins. Co.,*

465 N.W.2d 68, 70 (Minn.Ct.App.1991), *aff'd,* 481 N.W.2d 48 (Minn.1992).

¶ 24 In relying upon the common law to resolve statutory omissions and ambiguities, we presume the legislature was well informed about the existing common law before the statute was enacted and did not intend to enact a statute that conflicted with the common law. *Citation Bingo, Ltd. v. Otten,* 121 N.M. 205, 211, 910 P.2d 281, 287 (1995). This rule of construction is a recognition that any law is passed against the background of all the law in effect at the time. If no aspect of the background of law is clearly abrogated, it is presumed to be consistent with, if not incorporated into, new legislation.

¶ 25 We will now determine if the plain meaning of the Partition Act dictates the abrogation of our courts' common-law equitable partition powers.

### C. The Equitable Jurisdiction of New Mexico Courts

¶ 26 Aline Sims' focus on the personal property characteristics of leaseholds is misplaced. The issue in this case is not whether leaseholds are real or personal property, but rather, whether leaseholds are partitionable—either in equity under the common law or in law under the Partition Act. If leaseholds are partitionable one way or the other, it is immaterial whether leaseholds are personal or real property. Moreover, if leaseholds may be partitioned in equity, then we need not consider whether they fall into the statutory class of "real estate" and "lands, tenements, and hereditaments" that are "owned" by the persons seeking partition. *See Heimann v. Adee,* 122 N.M. 340, 344, 924 P.2d 1352, 1356 (1996) ("We conclude that the focus on classification of a state grazing leasehold as real or personal property is misplaced. We need not classify the property at issue in order to resolve the issues raised on appeal.").

¶ 27 New Mexico courts do not distinguish between actions brought at law or suits brought in equity. Our district court rules expressly "govern ... all suits of a civil nature whether cognizable as cases at law or

in equity." Rule 1–001 NMRA 1996; *cf.* N.M. Const. art. VI, § 13 ("The district court shall have original jurisdiction in all matters and causes not excepted in this constitution . . . ."); U.S. Const. art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and equity . . . ."). Under our court rules, there is "one form of action to be known as 'civil action'," in which all claims may be joined and all remedies are available. Rule 1–002 NMRA 1996.

 28 Thus, as a general proposition, "Where a statute gives a right of action without prescribing the form, the right of action may be enforced by any appropriate remedy, legal or equitable." 27A Am.Jur.2d *Equity* § 107 (1996). Under this general principle, if the allegations of a complaint disclose, in addition to a claim for statutory relief, the existence of a claim for equitable relief, the court can administer full relief. *Cf. Martinez v. Mundy,* 61 N.M. 87, 96, 295 P.2d 209, 215 (1956) (discussing "the familiar rule that when a court of chancery obtains jurisdiction of a cause, it will retain it to administer full relief"), *overruled on other grounds by Evans Fin. Corp. v. Strasser,* 99 N.M. 788, 791, 664 P.2d 986, 989 (1983). "However, equity will not act if there is a complete and adequate remedy at law." *S.P.C.S., Inc. v. Lockheed Shipbuilding & Constr. Co.,* 29 Wash.App. 930, 631 P.2d 999, 1001 (1981).

 29 There is no requirement that the creation of a statutory remedy at law for a particular type of claim will automatically supplant an equitable remedy that addresses the same claim. 1 Am.Jur.2d *Actions* § 62 (1994). "[A] major departure from the long tradition of equity practice should not be lightly implied." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 320, 102 S.Ct. 1798, 1807, 72 L.Ed.2d 91 (1982). In fact, the presumption is that the legislature, in enacting statutes, does not intend to overturn long-established equitable powers beyond what it declares "with irresistible clearness" by either express declaration or necessary implication. G.A. Endlich, *A Commentary on the Interpretation of Statutes* § 113 (1888); *see also In re Garcelon's Estate,* 104 Cal. 570, 38 P. 414, 417 (1894) (the legislature is presumed not to overturn long-established principles of law). These concepts were cogently explained by the Supreme Court of Minnesota:

> Equity, which is not a distinct and self-sufficient juristic system designed to overrule or correct other law, functions as a supplement to the rest of the law where its remedies are inadequate to do complete justice. Since the code abolished separate courts of chancery and made relief available in both equity and at law in a single action, equity, in fusing itself with the law, has been extended into new fields but without any loss of its basic function as a supplemental source of relief. Where, as here, a statute has only enlarged and united court powers previously existing at common law and in equity, and modified the proceedings under those powers, such statute is not, in the absence of express language or necessary implication, to be construed as supplanting, impairing, or restricting equity's normal function as an aid to complete justice. A statute is not to be construed in derogation of well-established principles of common law, *or of equity,* unless so required by express words or by necessary implication and then only to the extent clearly indicated. Any other holding would defeat equity's fundamental purpose. Statutory enactments, even though they provide new procedures to enforce pre-existing rights at law and in equity, are to be read in harmony with the existing body of law, inclusive of existing equitable principles, unless an intention to change or repeal it is apparent.

*Swogger v. Taylor,* 243 Minn. 458, 68 N.W.2d 376, 382 (1955) (footnote and citations omitted). The abiding equitable powers are described as being concurrent or supplemental to the legal remedy created by statute. *See* 1 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 182 (Spencer W. Symons ed., 5th ed. 1941) (equitable jurisdiction is generally not destroyed or lessened by a legal remedy, "although it is made to be concurrent"); *Swogger,* 68 N.W.2d at 382 (describing equity as supplemental to the rest of the law).

30 As we have just indicated, only if a statute so provides with express language or necessary implication will New Mexico courts be deprived of their inherent equitable powers. *Chaves v. Myer*, 13 N.M. 368, 379, 85 P. 233, 235 (1906) (courts retain "preexisting inherent equity jurisdiction ... in the absence of words in the statute prohibitive of such concurrent jurisdiction").

[T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction."

*Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946) (quoting *Brown v. Swann*, 35 U.S. (10 Pet.) 497, 503, 9 L.Ed. 508 (1836)). Thus, unless the intention to limit partition to real property is expressly spelled out by the legislature, the Partition Act has no legal impact on a court's exercise of its common-law powers in equity. Similarly, unless the legislature has expressed a contrary intention, a case that is brought under the statutory procedures of the Partition Act may induce the court to exercise its equitable jurisdiction.

### D. Legislative History of the New Mexico Partition Act

31 Aline Sims argues that her position is supported by the legislative history of the New Mexico Partition Act. The 1918 New Mexico opinion *Field v. Hudson*, 25 N.M. 7, 13, 176 P. 73, 75 (1918), stated that "[o]ur partition statute apparently was copied from Illinois." Relying upon this comment, Aline Sims states that, "[t]he version of the Illinois [partition] act in effect in 1907 when our Partition Act was adopted contained the language expressly including leaseholds." She goes on to state that because the New Mexico Partition Act did not copy the Illinois law by including leaseholds, this omission "is conclusive because the legislature clearly understood the need for additional language if leaseholds, and other personal property were to be included in the Partition Act." The thrust of her argument is that this legislative history shows that the legislature implicitly abrogated the equitable powers of the court. However, Aline Sims' research is inaccurate. The Illinois act upon which the New Mexico legislature most likely relied does *not* expressly state that leaseholds may be partitioned.

32 The *Field* court does not mention whether the New Mexico legislature derived its Partition Act from the 1821, 1845, or 1874 version of the Illinois Partition Act. The 1821 version did expressly mention "estates for life or years." The statute stated

that no such partition, between joint tenants or tenants in common, who hold or shall hold *estates for life or years*, with others holding equal or greater estate, shall prejudice any entitled to the reversion or remainder, after the death of the tenants for life, or after the expiration of the years.

(Ill.Rev.Stat. at 514 (1839) (1821 Illinois Partition Act, 1820–21 Ill.Laws at 14) (emphasis added); *see Pierce v. Pierce*, 4 Ill.2d 497, 123 N.E.2d 511, 514 (1954)). This language indirectly suggests that leaseholds may be partitioned. It guarantees that a partitioner who holds an estate for years cannot, in partitioning that leasehold interest, prejudice anyone who is "entitled to the reversion or remainder." Ill.Rev.Stat. at 514 (1839). However, this was almost certainly not the statute from which ours was derived.

33 It seems likely that in 1907, the New Mexico legislature, if it chose to pattern our act upon the act of Illinois, would rely upon a contemporaneous version of that state's partition laws. The Illinois Partition Act was revised in 1845 and 1874 and not again until 1935. *See* 1845 Ill.Laws, ch. LXXIX at 399; 1874 Ill.Laws, ch. 106 at 749; 1935 Ill.Laws at 1054. A comparison of the pertinent provisions leads us to conclude that, if the *Field* court was correct, the New Mexico Partition Act was based upon the language of the 1845 Illinois act. The relevant section of that act, like our own, refers expressly to "land, tenements or hereditaments" and does not mention estates for years. We have struck-out

the portions of the statute that were not carried over into the similar New Mexico law:

> When any lands, tenements or hereditaments, shall be held in joint tenancy, tenancy in common or coparcenary, whether such right or title be derived by purchase, devise or descent, ~~or whether any, all or a part of such claimants be of full age or minors, it shall be lawful for any one or more of the persons interested, by themselves, if of full age, or by their guardians, if minors,~~ to present to the circuit court ~~of the county where such lands or tenements lie, or where the lands or tenements lie in different counties, in the circuit court of the county in which the major part of such lands lie; but if the major part of such lands do not lie in any one county, then to the circuit court of any county in which any of such lands lie, their petition,~~ praying for a division and partition of such premises, according to the respective rights of the parties interested therein, and for a sale thereof, if it shall appear that partition cannot be made without great prejudice to the owners.

Ill.Rev.Stat. ch. 79, § 1 (1856) (1845 Illinois Partition Act, 1845 Ill.Laws, ch. LXXIX at 399); *compare* Ill.Rev.Stat. ch. 106, § 1 (1895) (1874 Illinois Partition Act, 1874 Ill. Laws, ch. 106 at 749). Virtually identical language appears in the 1907 New Mexico law. We have struck out the segment that is not derived from the Illinois Law:

> When any lands, tenements or hereditaments shall be owned in joint tenancy, tenancy in common, or co-parcenary, whether the right or title be derived by donation, grant, purchase, devise or descent, ~~it shall be lawful for any one or more persons interested, whether they be in possession or not~~ to present to the district court their petition in chancery, praying for a division and partition of such premises, according to the respective rights of the parties interests therein, and for a sale thereof, if it shall appear that partition cannot be made without great prejudice to the owners.

NMCL 1897, § 2685 (1907 N.M.Laws, ch. 107, art. XV, § 266 (amending § 2685 and adding the partition provisions)).

34 It is true that another section of the 1845 Illinois act does mention leaseholds:

> The petition shall particularly describe the premises sought to be divided or sold, and shall set forth and make exhibits of the rights and titles of all parties interested therein, so far as the same are known to the petitioners, *including tenants for years,* for life, by the courtesy, or in dower; and of persons entitled to the reversion, remainder or inheritance; and of every person who, upon any contingency, may be or become entitled to any beneficial interest in the premises, so far as the same are known to the petitioners; and such petition shall be verified by affidavit.

Ill.Rev.Stat. ch. 79, § 2 (1856) (emphasis added). This section does not state whether "tenants for years" may partition their interest. It merely makes the practical requirement that the partitioners list *anyone* who has *any kind* of interest in the property, including all non-parties whose interests may be affected when the property is divided. This provision finds no direct parallel in the 1907 New Mexico law. Most similar is a requirement that "[e]very person having an interest in the premises, whether *having possession or otherwise,* or whether such interest be *based upon the common source of title or otherwise,* shall be made a party to such petition." NMCL 1897, § 2685 (1907 N.M.Laws, ch. 107, art. XV, § 267) (emphasis added). This language from the New Mexico statute is sufficiently broad to include almost any kind of property.

35 Contrary to Aline Sims' argument, the 1845 Illinois Partition Act, if it was the source for our own law, contained no express language indicating whether leaseholds may be partitioned. However, the Illinois Supreme Court did determine in 1954 that, despite this lack of specificity, leaseholds could be partitioned under the Illinois Partition Act. In *Pierce v. Pierce* the Illinois court considered an action for partition of a 99–year leasehold. The pertinent statute, an amended version of the above-mentioned statutes, was similar to ours: "When lands,

tenements, or hereditaments are held in joint tenancy or tenancy in common ... any one or more of the persons interested therein may compel a partition thereof by complaint in chancery...." Ill.Rev.Stat. ch. 106, para. 44 (1953). The defendant, in an argument similar to that of Aline Sims, claimed that the words "lands, tenements, or hereditaments" implicated freeholds and not leaseholds. *Pierce,* 123 N.E.2d at 512. The *Pierce* court looked to the legislative history of the Illinois partition act and its antecedents in ancient English law. *Id.* The Illinois partition act traces its lineage directly to Sixteenth Century English partition laws that did permit the partitioning of leaseholds. *Id.* The *Pierce* court found that no subsequent amendment to the Illinois partition act abrogated the partition of leaseholds. *Id.* at 514.

36 Thus, the New Mexico Partition Act incorporated ambiguous language from an Illinois statute, which in turn was derived from ancient English laws that, without question, permitted the partitioning of leaseholds. In directing the Court to the legislative history of the Act, Aline Sims has inadvertently revealed another strong argument supporting our conclusion that leaseholds may be partitioned in New Mexico. It is apparent from the Act's origins in Illinois law that our legislature had no intention of precluding the partition of leaseholds.

37 We emphasize that we are not assuming that the New Mexico Partition Act retains any aspect of the Illinois Act that might permit the partition of leaseholds as a matter of right. The phrase "as a matter of right" means a legally enforceable right that cannot be qualified or denied. *See Arch Dam Constructors v. State Tax Comm'n,* 12 Utah 2d 96, 363 P.2d 80, 81 (1961) (legally enforceable right); *People v. Tadd,* 12 Ill.App.3d 391, 299 N.E.2d 8, 10 (1973) (qualified, denied). Nothing so extreme is contemplated by either this opinion or the Partition Act. We are merely affirming the right of parties to request—rather than force—the partition of leasehold property. As has always been the case, the power to order such a partition rests in the equitable powers of the court. The Partition Act itself gives the court authority to deny partition if it "cannot be made without great prejudice." Section 42-5-1.

E. The New Mexico Partition Act Retains the Equitable Jurisdiction of the Courts

1. The chancery jurisdiction of New Mexico courts

38 Aline Sims is incorrect in claiming that the plain language of the Partition Act abrogates the court's equitable powers. Section 42-5-1 explicitly states that the persons interested in seeking partition should "present to the district court *their complaint in chancery.*" (Emphasis added.) In England, from ancient times, courts possessing equitable powers and jurisdiction were the courts of chancery. 1 Pomeroy, *supra,* § 12a. In the United States, states that have adopted the Rules of Civil Procedure have abolished separate court systems devoted exclusively to equity jurisdiction. *Id.* § 42a. In New Mexico "[t]he Rules of Civil Procedure now govern all civil suits, whether cognizable as cases at law or in equity ..., and provide for one form of action, 'civil action.'". NMSA 1978, § 19-4-21 note (Repl.Pamp.1994).

39 Long before New Mexico achieved statehood, the distinction between chancery and common-law jurisdiction was abolished. The Organic Act that established the Territory of New Mexico stated that "supreme and district courts, respectively, shall possess chancery as well as common-law jurisdiction. Each district court, or the judge thereof, shall appoint its clerk, who shall also be the register in chancery, and shall keep his office at the place where the court may be held." NMSA 1978, Organic Act Establishing the Territory of New Mexico, September 9, 1850, § 10 (Vol. 1, Pamp. 3) (enacted by the U.S. Congress at 9 Stat. 446, § 10); *see also* NMCL 1860–61 art. XI, ch. XV, § 8 (published 1865) (describing the chancery jurisdiction "arising in all causes and matters in equity" of the courts of the New Mexico Territory).

40 Thus, "[t]he terms 'equity' and 'chancery' are interchangeable and are constantly used as synonymous in all of our states, as well as in England." *Wagner v. Armstrong,* 93 Ohio St. 443, 113 N.E. 397, 401 (1916). Whatever may be implicated by requiring

petitioners, under the Section 42–5–1, to bring "their complaint in chancery," it is certain there was no intention by the legislature to strip the courts of their equitable partition jurisdiction. The early New Mexico case *Field v. Hudson* explains the relationship between the legal and equitable aspects of the Partition Act.

### 2. *Field v. Hudson*

41 Aline Sims argues that our claim of equitable partition powers is contradicted by the 1918 New Mexico case, *Field v. Hudson.* That case states that "[t]he partition of real estate in this state is regulated by statute, and is not dependent upon the common law or the general provisions of equity." *Field,* 25 N.M. at 12, 176 P. at 75. Aline Sims' summation of this case is inadequate. She fails to mention that *Field* goes on to explain "[t]hat the mode of obtaining a division of real estate given by this statute was intended to take the place of the common law remedy by writ of partition." *Id.* at 14–15, 176 P. at 76. The remedy of a writ of partition, "was generally attended by considerable expense and frequently subject to great delay," and "[i]t was to obviate these difficulties by affording the parties an easy, cheap, and expeditious mode of obtaining partition that the statute was enacted." *Id.* at 15, 176 P. at 76. This reveals that the Partition Act was intended to streamline a complex common-law system of procedure. Section 42–5–1 is procedural rather than substantive. *See Mulsow v. Gerber Energy Corp.,* 237 Kan. 58, 697 P.2d 1269, 1272 (1985) (stating the Kansas partition act is procedural and not substantive).

42 There is no indication in *Field* that there was ever an intention to deprive the Court of its inherent equitable power to partition commonly owned possessory interests. The New Mexico Partition Act removed onerous common-law procedural burdens, but it gave no actual cause of action regarding specific rights or interests. It provided statutory rules for maintaining a cause of action that previously existed—and continues to be maintained—in equity. *See Mulsow,* 697 P.2d at 1272 (discussing the Kansas partition act in a similar light). "Although, since the

adoption of the code in this state, a statutory partition action is governed by the rules of pleading, practice, and evidence applicable to an ordinary civil action, determinations under the statutory procedure are, nevertheless, governed by equitable principles." *Swogger,* 68 N.W.2d at 382 (footnotes omitted). While an action to partition is a statutory procedure, the court is called upon to exercise its equitable powers to devise a fair and just settlement for the parties. *Swartz v. Becker,* 246 N.J.Super. 406, 587 A.2d 1295, 1298 (App.Div.1991) (discussing the statutory nature of the partition action); *Boissonnault v. Savage,* 137 N.H. 229, 625 A.2d 454, 456 (1993) (discussing the court's equitable powers).

### F. The Nature of the Common–Law Equitable Partition Powers of New Mexico Courts

43 It is inherent in the court's powers to provide as fair a partition as possible to the parties by means that are appropriate to the special circumstances of each individual case. *Northern N.H. Mental Health & Developmental Servs. Inc. v. Cannell,* 134 N.H. 519, 593 A.2d 1161, 1162 (1991) [hereinafter *Cannell* ]. This traditional equitable power to treat each partition case individually would be significantly curtailed if Aline Sims' restrictive interpretation of the Partition Act were to be adopted. We would be foreclosed from providing equitable remedies to parties who would otherwise be entitled to partition at common law.

### 1. Partition can be none other than an equitable remedy

44 Partition by its very nature, because it requires the court to balance the individual interests and circumstances of each party, can be none other than an equitable remedy. A strictly legal remedy that applied rigid formulae for dividing property would be unworkable. A court of law is inherently "unable to adjust the often complicated rights of the parties, as where one co-tenant had laid out large sums for improvements, or had erected valuable buildings, or had been in receipt of all the rents and profits." 6 John Norton Pomeroy, *Equity Jurisprudence &*

*Equitable Remedies* § 702 (3d ed. 1905). Partition in New Mexico is thus intrinsically equitable in nature even if the partition statutes did not so state. "It would be difficult to suggest any remedy known to jurisprudence that partakes more clearly of chancery jurisdiction than the action of partition." *Wagner,* 113 N.E. at 401.

### 2. Partition is a remedy much favored by the law

45 Public policy supports our conclusion that leaseholds may be equitably partitioned under New Mexico law. Aline Sims has offered no persuasive reason why the legislature would prevent leaseholds from being partitioned, yet there are several strong policy reasons why the right to partition should not be so limited. These reasons apply to leaseholds as well as other forms of property. Partition is a remedy said to be much favored in the law. "Indeed, so ancient is the history of judicial partitions, and so favored are partitions that it is now beyond contention that, independent of any statute, a court of equity has the inherent power to issue a decree of partition or require the sale of jointly owned property." *Chiang v. Chang,* 137 A.D.2d 371, 529 N.Y.S.2d 294, 295 (1988).

46 Judicial intervention is sought because there has been a breakdown in the relationships between those who share possession of property. The parties can no longer cooperatively and peacefully enjoy their rights in that property. *Id.* 529 N.Y.S.2d at 297. The purpose of partition is to create a way for the parties to avoid the inconvenience and dissension caused by the inharmonious joint possession of the property. *Garcia–Tunon v. Garcia–Tunon,* 472 So.2d 1378, 1378 (Fla. Dist.Ct.App.1985). Furthermore, partition "is based upon the principle that no one can be compelled to hold property with another, and it is available to anyone who does hold property in common with another." Andrew L. Gates, III, *Partition of Land and Mineral Rights,* 43 La.L.Rev. 1119, 1119 (1983) (footnotes omitted). Partition secures peace, promotes the enjoyment of property, and advances industry and enterprise. *Miller v. Miller,* 222 Kan. 317, 564 P.2d 524, 527 (1977) (discussing benefits of partition).

### 3. At common law any type of property may be partitioned

47 Linked to the equitable powers of the court is the general principle that at common law any type of property may be partitioned. Because partition is looked upon with such favor, this common-law equitable remedy can be applied to any property capable of being held in cotenancy. *Mulsow,* 697 P.2d at 1273. At common law every class of property, including personal property, may be subject to partition. *Greenwald v. Kearns,* 104 Ohio App. 473, 145 N.E.2d 462, 464 (1957); *see also* 68 C.J.S. *Partition* §§ 23, 24 (1924) (listing many types of property that can be partitioned).

48 Leaseholds are no exception to the common-law rule that all types of property may be partitioned. There are many cases from many jurisdictions on this point. Most deal with the interpretation of a particular partition statute, but all look to common-law precedent. *See, e.g., Chiang,* 529 N.Y.S.2d at 295 (partition of a leased apartment); *Baldwin v. Baldwin,* 516 So.2d 560, 561–62 (Ala. 1987) (partition of 99–year leasehold in 10 acres of land); *George v. Bridbord,* 113 A.D.2d 869, 493 N.Y.S.2d 794, 795–96 (1985) (partition of lease of commercial office space); *see also* 59A Am.Jur.2d *Partition* § 42 (1987) ("It is generally held that there may be partition among lessees who are cotenants."); G.L.C., Annotation, *Lease as affecting partition,* 151 A.L.R. 388, 400 (1944) ("It is usually held that there may be partition among lessees who are co-tenants....").

49 This Court tacitly acknowledged the possibility that leaseholds could be partitioned in *Sullivan v. Sullivan,* 82 N.M. 554, 484 P.2d 1264 (1971). In that case the parties requested by stipulation that the commissioners consider the partition of state and federal leased land. We stated that we did not "find error concerning the partition of leased lands." *Id.* at 555, 484 P.2d at 1265. In *Sullivan,* any proposal to partition leased lands was not deemed to be a rule of law, but merely a recommendation that could be made to the commissioners. *Id.*

50 It is important that this case concerns the partition of ranching units that were a

combination of leasehold and fee interests. The fee interests were much greater in value and size. It is more reasonable, and of greater benefit to the parties, to partition the interests in their entirety, rather than piece-meal. It is probable that many, if not most, ranches in New Mexico are some combination of freeholds and state and federal lease-holds. The district court below recognized that "[a] ranch consisting of deeded and state leased land is customarily sold as a unit and the value of the state leased land is recognized by both the seller and purchaser." If these properties have been managed as a combined and integrated asset, there is little sense—when the parties seek partition—in permitting the deeded portion to be divided while the leasehold portion remains whole. In fact, a decision that leaseholds could not be partitioned would cause great hardship to most of the ranch owners in New Mexico who might in the future want to divide their interests. Our opinion today demonstrates that there is a statutory right to partition the fee interests and an equitable privilege to partition the associated leased interests. If the trial court could not partition both together, the court's power to provide equitable remedies would be frustrated.

### G. Summation

51 The broad practical implication of our conclusion on this issue is that, contrary to the narrow interpretation of the Act urged by Aline Sims, the Partition Act has no legal impact on the court's exercise of its common-law powers in equity. In fact, the Act may be used *as a vehicle* for equitable partition, as was done with the leaseholds in this case. The court below did not hold that the tenants had a right under the Act to force partition of the leaseholds. Rather, by instructing the commissioners to include the grazing leases in their report, the court was simply applying the mechanism of the Act to facilitate the exercise of its powers in equity. We emphasize that the court may exercise these equitable powers at its own discretion. The Act may not be used to compel the partition of types of property that it does not expressly mention. Lands, tenements, and hereditaments and real estate are only part—perhaps a small part—of the universe of all partitionable property. Many other kinds of property may be subject to partition in equity.

## III. THE LAND COMMISSIONER WAS NOT AN INDISPENSABLE PARTY

52 Aline Sims argues that the Commissioner of Public Lands is an indispensable party to any action involving the partition of state grazing leases. She claims that the judicial action in this case to partition state leases usurps authority that belongs solely to the Land Commissioner.

53 The absence of an indispensable party in New Mexico is no longer considered, as Aline Sims asserts, a jurisdictional defect. *See Keirsey v. Hirsch,* 58 N.M. 18, 28, 265 P.2d 346, 353 (1953) (stating that whether or not parties are indispensable is a jurisdictional question). Whether a party is indispensable is more a factual question than a legal question. The question requires a balancing test, leaving to the discretion of the court whether the suit can continue without a specific party. *C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.,* 112 N.M. 89, 91, 811 P.2d 899, 901 (1991). This balancing test is set forth in the New Mexico procedural rule governing the joinder of indispensable parties which closely resembles the comparable federal rule. *See* Rule 1-019 NMRA 1996; *compare with* Fed.R.Civ.P. 19. The rule sets up a two-step analysis. The court first considers several factors relevant to whether the absent party should be joined in the action, Rule 1-019(A); second, the court determines what consequences should follow if joinder of the absentee is infeasible, Rule 1-019(B). *See* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1601, at 14-15 (1986).

54 Because we conclude that the Commissioner is not indispensable, we need only apply the first step of this analysis as set forth in Rule 1-019(A):

A. Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if:

(1) in his absence complete relief cannot be accorded among those already parties; or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect that interest; or

(b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

This list of considerations is not intended to be exclusive. 7 Wright, *supra*, § 1601, at 15. The specific circumstances of the case may suggest more specific considerations. Indeed, in New Mexico, in *Swayze v. Bartlett*, we described the specific interests that would render the Land Commissioner an indispensable party:

If the controversy involves a question concerning the legality of a state lease, the eligibility of the lessee thereunder, the matter of performance of the lease, reservations, if any, in the lease, or a matter of public policy requiring passage thereon by the commissioner of public lands, then the commissioner is not only a necessary party, but is an indispensable party. If, on the other hand, none of the above questions are involved, a district court should have jurisdiction to adjudicate the issues as between private litigants, liberally allowing, however, intervention to the commissioner, if any public land question is or could be involved in the case.

*Swayze*, 58 N.M. at 510–11, 273 P.2d at 371. This rule has been used by this Court several times when parties sought to join the Land Commissioner as an indispensable party to a suit. *See, e.g., Sproles v. McDonald*, 70 N.M. 168, 171, 372 P.2d 122, 124–25 (1962) (using the *Swayze* rule to conclude that the boundary dispute involving private land adjacent to state owned grazing leasehold did not involve a public policy question, nor require passage thereon by the Land Commissioner); *Ballard v. Echols*, 81 N.M. 564, 566, 469 P.2d 713, 715 (1970) (using the *Swayze* rule to conclude that Land Commissioner had no involvement and no interests impaired when person listed as purchaser of certain state lands auctioned by Land Commissioner alleg-

edly contracted to convey one-half interest in those lands to business partner).

55 Looking at the criteria in Rule 1–019(A), we do not find that complete relief in the form of partition cannot be accorded without the participation of the Land Commissioner, nor does the Commissioner have any interests in need of protection, nor will the Commissioner's lack of participation affect the obligations of the other parties. We conclude, under the *Swayze* rule, that no one questions the legality of the state leases, the eligibility of the lessees under the leases, the performance of the leases, or any reservations in the leases. No one has raised any objection that would require the Land Commissioner's participation as a matter of public policy. *See Swayze*, 58 N.M. at 510–11, 273 P.2d at 371. This partition action does not affect the state's status as a lessor, and does not purport to change the lessees of the grazing lease who have already been recognized and approved by the Land Commissioner.

 56 The lessor, in a partition action between lessees, is, as a general rule, not an indispensable party. There may be circumstances when it would be necessary for the interests of the lessor to be represented in such a partition, but it would be at the discretion of the court to make such a determination. A partition action operates only upon the possessory rights of the lessees. The nonpossessory interest of the lessor generally remains unaffected. *Texas Oil & Gas Corp. v. Ostrom*, 638 S.W.2d 231, 234 (Tex. Ct.App.1982), *reh'g denied*, Mar. 30, 1983. Though the interests of the lessees will be significantly altered, the lessor's interest "will remain constant and unaffected." *Douglas v. Butcher*, 272 S.W.2d 553, 555 (Tex.Civ.App.1954). Thus, the Land Commissioner is not rendered an indispensable party merely by assuming the role of the lessor.

57 A decree of partition does not create, manufacture, alter, or divest title to the property in question. It does not change the origin or character of the property. Its only effect is to sever the unity of possession; jointly held property is converted into severally held property. *See Rodriguez v. La*

*Cueva Ranch Co.,* 17 N.M. 246, 251, 134 P. 228, 229 (1912). The action to partition the state grazing leases between Aline Sims and the Sims Group is entirely a private action between the parties that has no effect upon the interests of the Land Commissioner.

## IV. THE INTERLOCUTORY ORDER WAS PROPERLY MODIFIED

58 As stated in the Facts above, the trial court on January 4, 1991 entered an Order recognizing the agreement among the parties as to the percentages of ownership they each held in the two ranches. This January Order was modified by an Order of November 5, 1991 in which the trial court permitted the Sims Group to pool their collective interests for the purposes of the partition action. The court also added to the property descriptions certain Texas lands that had inadvertently been omitted from the January Order. Aline Sims objects that the January Order had been impermissibly "set aside" by the November Order. She describes the January Order as a stipulated agreement among the parties and claims that the court became responsible for enforcing the terms of the Order. The court could not, she states, subsequently enter an order inconsistent with the original stipulation.

59 We disagree. As the trial court stated, the January Order was interlocutory. An interlocutory decision is any decision made by the court prior to the final judgment. *Black's Law Dictionary* 815 (6th ed. 1990) (defining "interlocutory decision"). District courts have plenary power over their interlocutory orders and may revise them when equity so requires. *Barker v. Barker,* 94 N.M. 162, 165–66, 608 P.2d 138, 141–42 (1980). An interlocutory order may be revised at any time prior to final judgment. *Universal Constructors, Inc. v. Fielder,* 118 N.M. 657, 659, 884 P.2d 813, 815 (Ct.App. 1994).

## V. THE POOLING OF INTERESTS WAS PROPER

60 Aline Sims maintains that the Court below violated the Partition Act by allowing the Sims Group to collectively pool their interests for purposes of the partition proceeding. For support she points out that the Partition Act states that the property is to be divided "according to the respective rights of the parties interested therein," Section 42–5–1, and instructs the commissioners to partition the property "assigning to each party his share," Section 42–5–6. According to Aline Sims, these phrases require each individual co-tenant to be severed from every other individual co-tenant, vesting in each co-tenant no more and no less than their separate share of the property. This constrictive interpretation of the Partition Act is patently incorrect.

61 Aline Sims' argument turns on the assertion that the Partition Act is a statute in derogation of the common law. *See* 2B *Sutherland, supra,* § 50.01 (stating that when legislation conflicts with the common law, the legislation will control). She claims it was intended by the legislature to abolish the common-law and equitable powers of the court that permit great latitude in the partitioning of property. As we have stated, Anglo–American courts have long possessed the inherent equitable power to divide property at the request of cotenants. *Rothert v. Rothert,* 109 Ill.App.3d 911, 65 Ill.Dec. 387, 390, 441 N.E.2d 179, 182 (1982). As discussed above, the legislature never intended in the Partition Act to deprive the New Mexico courts of their equitable and common-law powers.

62 The Act itself offers no suggestion that pooling is prohibited. The words "parties" and "party" in the statutes cited by Aline Sims can refer to those who hold any type of interest in property, be it individual or collective. *See* § 42–5–1; § 42–5–6. In the Partition Act, the word "party" and its derivations has the same general scope as the word "person" in many New Mexico statutes. *See, e.g.,* NMSA 1978, § 1–19–26(J) (Repl.Pamp.1995) ("As used in the Campaign Reporting Act ... 'person' means an individual or entity...."); NMSA 1978, § 5–10–3(F) (Repl.Pamp.1993) ("As used in the Local Economic Development Act ... 'person' means an individual, corporation, association, partnership or other legal entity...."). The decision as to whether a specific petitioner qualifies as a "party" for purposes of the

Partition Act is best left to the equitable discretion of the court.

63 In this case four of the five co-tenants approached the court for the right to pool their interests for the purposes of the partition action. The court, exercising its equitable powers, granted the motion. The purposes of partitioning are not compromised if some co-tenants wish to retain their collective proportion of the property in co-tenancy with others to the action. Nor do any of the parties forego any of their rights or interests by such a move. On the other hand, there would be nothing to be gained if the Partition Act were construed to require all parties to be adversaries, even though some desired to combine their collective interests. The trial court properly exercised its equitable powers.

## VI. THE PARTITION ORDER WAS NOT PREJUDICIAL

■ 64 Aline Sims claims the final Partition Order of the trial court was substantially prejudicial to her interests. Each of her objections to the Partition Order center upon her disagreements with the factual findings of the trial court. For example, she alleges that her share of land has no living quarters or working facility, and that she will be forced either to lease out the ranch, or invest in such improvements. The trial court, however, accepted the testimony of the Commissioners that she was compensated for these deficiencies by an award of additional land and a cash payment.

65 We have many times stated the standard of review of a trial court's findings of fact: Findings of fact made by the district court will not be disturbed if they are supported by substantial evidence. "Substantial evidence" means relevant evidence that a reasonable mind could accept as adequate to support a conclusion. This Court will resolve all disputed facts and indulge all reasonable inferences in favor of the trial court's findings. Moreover, in reviewing a challenge to a finding, it is the evidence supportive of the finding, not that which is adverse, that usually decides the issue. We will order a reversal only if the trial court has clearly abused its discretion. An abuse of discretion occurs

when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case. *State ex rel. Hooten Constr. Co. v. Borsberry Constr. Co.*, 108 N.M. 192, 193, 769 P.2d 726, 727 (1989); *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983); *Flinchum Constr. Co. v. Central Glass & Mirror Co.*, 94 N.M. 398, 400, 611 P.2d 221, 223 (1980). Finding no abuse of discretion, we defer to the trial court's conclusion that the "plan of partition is fair, feasible, economically sound, and is equitable to all parties."

## VII. THE COURT DID NOT MODIFY THE COMMISSIONERS' REPORT

■ 66 Aline Sims complains that the trial court in its Partition Order modified the recommendations in the "Report of the Commissioners." The Commissioners' report states:

> After the division it will be necessary to revamp the water system.... On the south parcel a connection from an existing well to the pipeline system will be necessary. In addition, the extension of approximately three miles of pipeline will be required for water distribution to similar locations in the "After" condition as was available "Before".

The trial court's "Judgement Partitioning Real Property" states:

> [The ranches will be partitioned] in accordance with the Partition Plan contained in the Report of Commissioners ... except [a survey for the purposes of revamping the water system shall] establish an easement 50 foot square containing the well in Section 12, township 20 South, Range 35 East, N.M.P.M., which is most feasible to connect with the pipeline serving the South portion of the Ranch, together with an easement 50 foot in width for the right of ingress and egress for the purpose of installing, operating, maintaining, repairing, replacing and monitoring the well, well equipment and pipeline facilities to service the South portion of the Ranch. The easement shall grant Plaintiffs exclusive use of the well and pipeline.

Aline Sims claims that by awarding to the Sims Group a well and easement situated

within her property line, the court contravened the Partition Act and the intent of the Commissioners because it failed to completely segregate the two ranches. We disagree that the court's order is inconsistent with the "Report of the Commissioners."

67 In interpreting a legal document, the court will find its intent by looking to the ordinary meaning of the words in the document. We will not seek an explanation that departs from the plain and clear meaning of the words, unless a literal interpretation will lead to injustice, contradiction, or absurdity. We find nothing contradictory between the quoted portions of the Commissioners' report and the court's order. The former states that a pipeline will be required to revamp the water system. The latter creates an easement for that pipeline. The Commissioners' report made no mention of the need for granting an easement and does not preclude the court's decision. The court's order on the other hand follows the Commissioners' recommendation that the pipeline be extended.

68 Moreover, contrary to Aline Sims' assertion, the court's order does not fail to completely segregate the parties. It places control of the well and the easement entirely in the hands of the Sims Group, stating, "The easement shall grant Plaintiffs exclusive use of the well and pipeline."

## VIII. THE COMMISSIONERS FOLLOWED THE COURT'S INSTRUCTIONS

69 The court provided the Commissioners with a set of instructions to follow as they devised their recommendations for the partitioning of the property. Aline Sims alleges that in three instances the Commissioners ignored those instructions.

70 First, she claims the court limited the commissioners to only three schemes for partition: 1) They could divide the property according to each party's percentages of undivided interest, so that the Sims Brothers Ranch would be divided into thirds and the S & D Ranch would be divided into fifths with Aline Sims receiving ⅓ and ⅕ respectively; 2) they could award an entire ranch to each of the two parties; or 3) they could "award to

Aline Sims, on the one hand, and the other parties, on the other hand, a greater divided share in one ranch and a lesser divided share in the other ranch." Instead, Aline Sims argues the commissioners impermissibly devised a fourth plan: They gave all of one ranch to the Sims Group and split the interest in the other ranch with an owelty award to Aline Sims. She claims this violated the court's "Instructions to Commissioners."

71 There is nothing in the language of the court's "Instructions to Commissioners" that precludes the final recommended partition. As stated above, partition is an equitable remedy, designed to provide the best solution for each individual situation. *See Cannell*, 593 A.2d at 1162. The commissioners as well as the court, are required to further the objectives of this equitable remedy. Their job is to learn the specific facts of the case and provide the court with a strong evidentiary basis for its partition order. This policy could conceivably be undermined were the court to circumscribe the possible solutions before its fact-finding commission even begins its work.

72 The second instance in which Aline Sims claims the court's instructions were ignored concerns the court's directive that the commissioners "assign to the respective groups her or their share by governmental subdivision description and/or metes and bounds." However, the commissioners divided the real estate by using fence lines and pasture numbers, which Aline Sims claims are uncertain and speculative. This problem was addressed by this Court in *Sullivan*, 82 N.M. at 554–55, 484 P.2d at 1264–65, in which the commissioners' report categorized the lands by descriptive names. In this case, as in *Sullivan*, there is no evidence in the record that the descriptions used by the commissioners are in any way prejudicial, that the information was misunderstood by the court, or that the parties were confused about the allocation of the property. *See id.* We conclude that there is no reversible error.

73 The third instance of alleged disregard by the commissioners of the court's instructions involves certain property listed

in Exhibit "D" of the "Instructions to Commissioners." The Commissioners were directed to appraise separately certain improvements on the S & D Ranch including a mobile home, a "snake proof" fence, some metal buildings, a dog house, and a saddle house. The parties' arguments with respect to this appraisal are purely factual disputations rather than legal challenges. We apply to this question the same standard of review for findings of fact discussed above. Aline Sims' allegations notwithstanding, we conclude that the trial court's determination concerning this property is supported by substantial evidence.

## IX. CONCLUSION

74 For the foregoing reasons we affirm the trial court's "Judgment Partitioning Real Property."

75 **IT IS SO ORDERED.**

BACA, C.J., and RANSOM, MINZNER and McKINNON, JJ., concur.